## Strock's Admr. v. L. & N. R. R. Co.

(Decided October 27, 1911.)

### Appeal from Henderson Circuit Court.

Railroads—Death of Person—Negligence, When Not Presumed—Fact That Appellee Did Not Attempt to Account Manifests No Culpability.—Guilford Strock was found dead near the track of appellee in the City of Henderson, on which track trains were run on the night preceding the finding of the body, and near his body were found fragments of his lantern, lunch basket, and the ·dishes it contained. His administrator filed this suit against the railroad company for causing his death, and on the evidence a peremptory instruction was given by the trial court to the jury to find for the railroad company from which finding the administrator appeals. Held, the mere fact that the appellant's intestate was killed is not evidence that his death was caused by the negligence of appellee's servants. Nor is such negligence to be presumed; and as the railroad company in the absence of proof of negligence is not required to account for the intestate's death, the fact that it did not attempt to do so manifests no culpability, and the giving of the peremptory instruction by the trial court to find for the defendant was proper.

JOHN C. WORSHAM, F. J. PENTECOST for appellant.

BENJAMIN D. WARFIELD, YEAMAN & YEAMAN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant sued in the court below to recover of appellee damages for the death of its intestate, Guilford Strock, alleged to have been caused by the negligence of appellant's servants in running one of its trains against or over him, at the intersection of Washington street with its railroad track, in a suburb of the city of Henderson.

Appellee's answer traversed the averments of the petition, and pleaded contributory negligence on the part of the intestate, which plea was denied by reply.

No eye witness testified how the intestate lost his life but it was on Sunday night, and evidently between twelve and one o'clock, as he was known to have been engaged at work in a distillery which it must have required until midnight to complete. The hands of a broken watch found on his body indicated that it ceased to run at 12:36 o'clock, a. m. The body was discovered about four o'clock Monday morning.

On the trial the circuit court at the conclusion of the appellant's evidence peremptorily instructed the jury to find for appellee. This was done and judgment entered in conformity to the verdict. Appellant insists that in giving the peremptory instruction the circuit court erred, and this is the sole question presented for decision by the appeal.

The circuit court was of the opinion that the appellant's evidence failed to show the intestate's death was caused by the negligence of appellee's servants; therefore, the case was held to come within the rule announced in Hughes v. Cincinnati, &c., R. R. Co., 91 Ky., 530, which entitled appellee to the peremptory instruction.

It is appellant's theory that the intestate, while returning to his home from the distillery, was struck in attempting to cross the railroad at Washington street by appellee's northbound train No. 54, due there at 12:36 o'clock a. m., which, it is claimed, gave no signal of its approach and was running at such speed as to knock the intestate's body sixty feet from the crossing and between appellee's main and switch tracks, at the same time scattering on the ground fragments of his lantern, lunch basket and the crockery it contained, from a point in ten feet of the crossing, to twelve feet beyond the body.

It is appellee's theory that as the intestate's body was found sixty feet from the crossing, he was, if struck

by a train at all, not at the time on the crossing, but beyond it walking on the track of the appellee or that of the Illinois Central Railroad Company, which parallels and lies immediately next to appellee's in crossing Washington street, as well as in approaching and leaving it; and that if the intestate was walking on appellee's track he was a trespasser to whom it owed no lookout duty. It is argued by appellee's counsel that this theory is supported by evidence in the record showing it to have been the intestate's custom to go from the distillery to his home by a somewhat indirect route to the tracks of the railroad and walking down them until he reached Washington street. This route, it is claimed, he adopted because the direct one from the distillery to the nearest point on Washington street was over low, wet ground, and it is not probable he took the latter route on the occasion of losing his life as the night was both dark and rainy.

The proximity of the intestate's body to the railroad tracks and the character of the wounds appearing on it, indicate with reasonable certainty that his death was caused by collision with a train; and in view of the evidence furnished by the fragments of lunch basket, crockery and lantern, some of which were found between the intestate's body and the crossing, it would not be beyond bounds of reason to conclude that he was struck by the train on the crossing and by its force knocked, or his body carried by the pilot, to the point sixty feet distant where it was found; but these facts did not of themselves authorize a recovery by the appellant. Proof that the intestate was killed by one of appellee's trains and through the negligence of its servants in operating it, was necessary in order to fasten liability upon the appellee for damages. Such proof, was in our opinion, lacking in this case. It does not appear from the evidence whether the intestate was killed by appellee's train, or a train of the Illinois Central Railroad Company, for, as previously stated, the tracks of both railroad companies enter Henderson together in parallel lines and cross Washington street at the same point; and it was in proof that at least two trains of each road passed the Washington street crossing between twelve and one o'clock the night of the intestate's death, and that such was their schedule time. It is argued for appellant that as the intestate's body was nearer appellee's track that of the Illinois Central Rail-

road, it must be struck by appellee's train. There would be much force in this argument but for the fact that the body was also close enough to the Illinois Central tract to have been knocked or thrown by one of its trains to where it lay.

It is further contended by appellant's counsel that the intestate must have been killed by appellee's north-bound passenger train, 54, which arrived at the crossing at 12:36 a. m. that night, its regular time, because his watch appeared to have stopped at that time. This argument assumes that the intestate's watch was running at the time the train struck him; that it then had the railroad time, was a correct time-keeper, and that its hands were not moved by anyone after it was found, none of which facts appears from the evidence. As already stated it was in evidence that other trains on both railroads, entering and leaving Henderson, crossed Washington street that night, one of them being an Illinois Central passenger train, also northbound, which was due at the Washington street crossing between 12 1-2 and 1 o'clock, a. m., and arrived on time. These facts leave the mind in doubt whether the intestate was killed by one of appellee's trains, or a train of the Illinois Central Railroad Company.

If, however, appellant's contention that the intestate was killed by appellee's train 54 could be said to have support from the evidence, there is still lacking evidence of any negigence on the part of its crew in operating it. There was some evidence that in approaching the Washington street crossing from the distillery where the intestate worked, the view south of the crossing was somewhat obstructed by telephone poles, a stable and the sides of an eight foot cut; but the evidence also showed that when within ten or fifteen feet of the east side of the railroad track, these objects were not in the way of seeing an approaching train several hundred feet south of the crossing.

There were two witnesses, Hunter and Howard, who undertook to testify on the subject of the speed of a train that passed at the time appellee's train 54 was due the night of the accident and as to the signals it gave. Neither of these witnesses claimed to have seen the train that night. When it passed the Washington street crossing Hunter was at work as a fireman in the boiler room of the Marston Furniture Factory four squares from the

crossing, and Howard at the Keystone mine, a half, or three-quarters of a mile south of the crossing. Although they did not see the train both thought it ran at a speed of forty miles an hour judging from the noise it made. Hunter was of opinion its whistle sounded at the Keystone mine, and again at the signal board near the north of Washington street. Howard could remember one sound of the whistle, which was given south of the mine, but admitted that it might have given other_ signals to which he paid no attention. Neither witness was certain that no other signals were given by the train in question, nor did either of them give any reason for fixing his attention on its speed and signals to the exclusion of all other trains. They admitted they heard other trains pass that night, but had no recollection whatever as to their speed or what signals they gave.

If we allow to the testimony of these two witnesses the full force claimed for it by appellant's counsel it could have no other effect than to show that a train, which they supposed to be appellee's passenger train, 54, passed the Washington street crossing at great speed and without giving the usual signals for the crossing. It does not identify the train as appellee's, or as the one by which the intestate was killed.

In other words the evidence as a whole fails to show whether the death of the appellant's intestate was due to the appellee's negligence, his own negligence, or that of either. The cause of the intestate's death is purely a matter of conjecture. As said in Early's Admr. v. L., H. & St. L. Ry. Co., 115 Ky., 13:

"There is no presumption of negligence against the appellee, any more than there is a presumption of contributory negligence on the part of the deceased. It was incumbent on the appellant to prove negligence on the part of appellee's servants in charge of the train, or facts from which such negligence could properly be inferred."

The facts of the case bring it clearly within the rule announced in Hughes v. Cincinnati, &c., R. R. Co., 91 Ky., 526. In that case after a freight train had passed through several tunnels a brakeman was found on one of the box cars in a dying condition. There were loose timbers hanging from the roof of one of the tunnels, and the theory of the plaintiff was that his intestate was struck by these timbers, while that of the defendant was that the injury was due to his failure to take the usual

precaution to sit, or lie down by the brakes, in passing through the tunnels, it being impossible to pass through one of the tunnels standing upright upon an ordinary box car. In approving the action of the trial court in giving a peremptory instruction for the defendant on the plaintiff's evidence, this court in the opinion of that case said:

"We are left to theorize as to it (cause of the death), one suing to recover damages for injury arising from another's neglect must offer some testimony to show that it was so occasioned. Negligence cannot be presumed in a case like this one. The presumption is the other way. It cannot be found without the evidence. The complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. Mere proof of the injury with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and under such circumstances he has offered no evidence tending to show it. He has merely presented two or more states of case upon which one may theorize as to the cause of the accident. Here, first, the deceased may have been struck by the low roof of tunnel No. 7, or, second, by that of No. 6, or third, by the hanging timber of No. 7; and only in the latter case could there be any liability upon the part of the company."

In Vittitoe's Admr. v. L. & N. R. R. Co., 19 R., 612, the body of the plaintiff's intestate was found by a railroad side track and there was no eye witness to the accident. In refusing a recovery the court said:

"In order to recover it was essential that the plaintiff show (1), that the boy was killed by the train of the defendant and (2), that it was negligently done. Unless the killing was done by the negligence of the servants of the defendant in charge of the train, there is no legal liability on the company therefor." * * *

In Wintusky's Admr. v. L. & N. R. R. Co., 14 R., 579, a recovery was sought for the death of the appellant's intestate, who was killed while serving the defendant as a brakeman on a freight train; it being alleged in the petition that he was knocked from the train and killed by a ledge of rock on the defendant's right of way which it

had negligently suffered to overhang its track. The circuit court gave a peremptory instruction for the defendant. The opinion of this court after discussing the several theories of the intestate's death advanced by appellant; disposed of them thus:

"It seems to us, however, that all this is mere speculation. Why not suppose that the deceased never came in contact with the ledge, but became dizzy, or stumbled in the darkness as he walked along the top of the car and fell off, the wound on his head being caused by coming in contact with some hard substance as he struck the ground. The company was perhaps guilty of neglect in allowing the rock to remain projecting so near the passing trains, but unless this caused the accident a recovery cannot be had on account of it. One may suspect that it did, but unless there is some evidence tending to show it, it was proper to give the peremptory instruction. There was none, and the judgment is, therefore, affirmed."

In Lou., St. L. & T. Ry. Co. v. Terry's Admr., 20 R., 803, in passing on a similar case we said:

"The fact that a person possessed of his mental faculties, who could see and hear, and is, as appellee contends, sober, is found dead, and evidently killed by a railroad train, on the right of way, in our opinion no more raises the presumption of negligence on the part of the employes of the railroad than it does of contributory negligence on the part of the person killed * * * and the court should have given the peremptory instruction asked for by appellant." Railroad Co. v. Humphrey's Admr., 20 R., 642; L. & N. R. R. Co. v. Wathen, 22 R., 82.

The following excerpt from the opinion in Louisville, &c., v. Kauffman, 20 R., 1069, but states in terser form, the doctrine approved in the cases, supra:

"When the question is one of negligence or no negligence, it is well settled law that where the evidence is esually consistent with either view—the existence or nonexistence of negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it."

The mere fact that appellant's intestate was killed is not evidence that his death was caused by the negligence of appellee's servants. Nor is such negligence to be presumed, and as appellee, in the absence of proof of negligence, is not required to account for the intestate's death, the fact that it did not upon the trial attempt to

do so, manifests no culpability. Dana & Co. v. Black-burn, 121 Ky., 707.

The giving of the peremptory instruction was proper, and the judgment is affirmed.