## Bell's Administratrix v. Chesapeake & Ohio Railway Company.

(Decided December 9, 1914.)

### Appeal from Lewis Circuit Court.

1. Railroads—Negligence—Presumptions.—In a suit against a railroad company to recover damages for killing a person, there is no presumption of negligence against the company, any more than there is a presumption of contributory negligence upon the part of the deceased; it is incumbent upon the plaintiff in such an action to prove negligence upon the part of the company's servants in charge of the train, or facts from which such negligence can be reasonably inferred.

2. Personal Injuries—Action For—What Complaining Party Must Show.—In an action to recover damages for personal injuries, the complaining party must not only show the injury, but he must also produce some evidence tending to show that the defendant was to blame; mere proof of the injury, with attending

circumstances showing that the party charged with neglect may have been blameless or may have been at fault, will not be sufficient.

3. Negligence—Submission to Jury.—When the question is one of negligence or no negligence, it is well settled that where the evidence is equally consistent with either view—the existence or non-existence of negligence—the court should not submit the case to the jury, because the party affirming negligence has failed to prove it.

ALLAN D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At about 6:15 o'clock on the morning of December 13, 1912, the body of appellant's intestate, George Bell, was found lying near appellee's eastbound track, about 300 feet east of the South Manchester depot, in Lewis county. His head was lying near the cross-ties, with his feet extended towards the hillside. The back of Bell's head was crushed, his neck broken, and there were a few scratches on his face and body.

Bell was a section laborer in the service of the appellee.

On the night in question his work was that of a watchman, his particular duty then being to watch for slips and slides along the hillside adjoining the track, as well as the river bank of section 217, which extended from a point about three-quarters of a mile east of the South Manchester station, to a point about the same distance west of the station.

On December 12th, the day before Bell's body was found, he had worked from about 6 o'clock A. M. to 2 o'clock P. M. He then went on duty again at 4 o'clock P. M. on the 12th, to remain on duty until 6 o'clock the next morning; and, as above stated, his body was found shortly after that time.

Section 216 of the railroad is east of section 217; and at the point where the two sections meet there is a shanty which was used for shelter by the track walkers and watchmen. Bell was last seen alive at the shanty about half past four o'clock A. M. by Wilson, a track walker on section 216. At that time Wilson left the shanty going east upon his inspection, leaving Bell, who was preparing to go west upon his route.

Freight train "First No. 98" passed the South Manchester station going east at 5:15 A. M. on the morning of the 13th; freight train "Second No. 98," going east, passed the station at 5:30 A. M., fifteen minutes later. Freight train No. 77 passed the South Manchester station, going west, at 5:30 A. M. It will thus be seen that train "Second No. 98," going east, and train No. 77, going west, passed each other at the Manchester station at 5:30, fifteen minutes after train "First No. 98" had passed that station going east.

It is contended that Bell was struck and killed by train "Second No. 98" at a point where the hill comes down to the track between the shanty and the South Manchester station; and his administratrix, having brought this action to recover damages for Bell's death, and the circuit court having peremptorily instructed the jury to find for the defendant at the close of the plaintiff's testimony, the plaintiff brings this appeal.

The appellant relies upon the following four acts of negligence upon the part of the appellee, any one of which, it is claimed, was sufficient to carry the case to the jury: (1) Negligence in failing to equip train "Second No. 98" with a burning headlight; (2) negligence in the operation of said train; (3) negligence in failing to give Bell a sufficient number of helpers or assistants to enable him to do his work as a watchman; and (4) negligence in violating the Hours of Service Act of Congress.

It will be noticed, however, that each of these grounds is necessarily based upon the alleged negligence of the appellee; and, if the evidence fails to show any such negligence, no one of the grounds is well taken, and the judgment should be affirmed.

The only direct evidence that could possibly tend to connect the appellee with the death of Bell is found in the testimony of Belton, the engineer of train "Second No. 98." He testified very briefly, the material part thereof being as follows:

"Q. Did you pass any train there at South Manchester that was coming west that morning? A. I passed 'First 77' east of South Manchester. Q. After you arrived at the Manchester station did you see anything ahead of you, or anything that looked like a man with a lighted lantern? A. I did. Q. At what point after you arrived at the station was it that you discovered the man with the lantern? A. On the hillside east of Man-

chester station. Q. You discovered 'him on the hillside, near the hillside, east, you say? A. Yes, sir. Q. Now, did you say whether, when you got to the station—when did you first see him? A. I seen him east of the station. Q. How far east of the station were you when you seen him? A. About six or eight hundred feet, about that, east of Manchester station. Q. What was he doing when you first saw him? A. Standing on the hillside. Q. How fast was the train going? A. About 25 miles an hour. * * *

"Q. Did you blow any whistle for him? A. I whistled at the crossing at Manchester. Q. That was just east of the depot? A. At the depot—right at the depot. Q. When did you learn that he had been struck? A. On my arrival at Russell, at the end of my division."

Upon being recalled by the plaintiff, Belton further testified in answer to interrogatories by the court:

"Q. By the Court: How close was this man to the track when you saw him? A. About 15 feet away from the track. Q. By the Court: Up on the hillside above there? A. On the hillside, yes, sir. Q. By the Court: Did you notice what he was doing? A. He ran down the fill and crossed the track in front of my engine."

This closed Belton's testimony.

It is strenuously argued by counsel for appellant that the above testimony of Belton shows that he was negligent in not checking his train because Bell was standing within a very few feet of the track, and not fifteen feet from the track.

This conclusion, however, is not warranted from the language used, since Belton expressly says that Bell was standing "up on the hillside above there."

Belton was not further questioned upon the subject, and no other witness ever saw either Bell or any other person near the track between the time he left the shanty at 4:30 o'clock that morning and the time when his body was subsequently found lying near the track.

Appellant insists that this evidence is sufficient to show that Bell was killed by train "Second No. 98," and by reason of the negligence of Engineer Belton.

It will be noticed, however, that this theory is based upon one of two inferences: first, that Bell was the man whom Belton saw; and, secondly, that he was killed by the negligence of the defendant's engineer. Neither of these inferences is supported by the facts. Belton merely says he saw a man standing up on the hillside, and

that he ran down the fill and crossed the track in front of his engine. He does not say the man was Bell, or that he knew Bell, or that his engine struck the man, the inference being that it did not strike the man, or that, if the engine struck the man, Belton did not know it. Belton was not asked if the engine struck the man; and giving his testimony its fair meaning, we must assume that he did not know his engine struck the man, if it did strike him, since he did not hear of Bell's death until after his train had reached the end of his division, at Russell. It is fair to conclude from Belton's testimony that the man crossed the track in safety, since he says he crossed the track in front of the engine, and makes no mention of any trouble of any kind by reason of his crossing. Belton being the only witness upon the issue of the train negligently striking Bell, the plaintiff's case is rather disproved than proved.

There being no presumption of negligence against the appellee, any more than there is a presumption of contributory negligence upon the part of the deceased, and it being incumbent upon the appellant to prove negligence on the part of appellee's servants in charge of the train, or facts from which such negligence could reasonably be inferred, we think the trial court properly sustained appellee's motion for a peremptory instruction. Early's Admr. v. L. H. & St. L. R. Co., 115 Ky., 13.

The rule applicable to cases of this character is well stated in Hughes v. Cincinnati, &c., R. R. Co., 91 Ky., 526, as follows:

"We are left to theorize as to it (the cause of death). One suing to recover damages for injury arising from another's neglect must offer some testimony conducing to show that it was so occasioned. Negligence cannot be presumed in a case like this one. The presumption is the other way. It cannot be found without evidence. The complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. Mere proof of the injury, with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and, under such circumstances, he has offered no evidence tending to show it.

He has merely presented two or more states of case upon which one may theorize as to the cause of the accident.''

Here, Bell may have been killed by ''First freight No. 98,'' or by train No. 77, or by ''Second freight No. 98''; and, in either case, it may have been due entirely to his own gross negligence; but, as above stated, no presumption arises that either of those facts was true. There must be evidence upon the subject from which negligence can be fairly inferred.

As was well said in Louisville Gas Co. v. Kaufman, 105 Ky., 131, ''when the question is one of negligence or no negligence, it is well settled law that, where the evidence is equally consistent with either view—the existence or non-existence of negligence—the court should not submit the case to the jury, for the party affirming negligence has failed to prove it.''

This rule has been consistently maintained by this court. See Stuart's Admr. v. N. C. & St. L. R. Co., 146 Ky., 127; Strock's Admr. v. L. & N. R. R. Co., 145 Ky., 150; Caldwell's Admr. v. C. & O. Ry. Co., 155 Ky., 609, and the cases there cited.

No negligence having been shown upon the part of the appellee, there was no case for the jury to pass upon, and the trial judge properly directed a verdict for the defendant.

Judgment affirmed.