### Cincinnati, New Orleans & Texas Pacific Railway Company v. Frogg's Administrator.

(Decided November 23, 1915.)

#### Appeal from McCreary Circuit Court.

1. Negligence—Cause of Injury.—Where the evidence in an action to recover damages for the negligent killing of an intestate requires us to theorize as to the manner in which the deceased met his death, and the theories advanced are equally plausible, all arising upon mere conjecture, a recovery cannot be had.

2. Evidence—Admissions—Competency.—Evidence of admissions asserted to have been made by a defendant is not admissible where the witness by whom such admission is sought to be proved, is unable to state that the person who made the statement sought to be proven was in fact one of the defendants.

TYE, SILER & GATLIFF and JOHN GALVIN for appellant.

ROBERT HARDING, JOHN W. RAWLINGS, J. P. HOBSON & SON and JOHN M. PERKINS for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

About nine o'clock on the night of April 26, 1913, Arthur Frogg, a young man about twenty years of age, was killed near the railroad depot at Pine Knot. His administrator instituted this action in the McCreary Circuit Court against the Cincinnati, New Orleans & Texas

Pacific Railway Company to recover damages for his death, and obtained a verdict and judgment in the sum of five thousand dollars. The railway company appeals.

Pine Knot is a village of some five or six hundred inhabitants. The tracks of the railway company run north and south through the village. The larger portion of the town is east of the tracks, and rather northeast of the depot. A public highway crosses the tracks just south of the depot, which is on the east side of the tracks; this highway crosses the tracks from west to east, and after passing the depot, it then turns to the north and runs parallel with the railroad tracks. Along in front of the depot and extending from this public highway to a point probably one hundred and fifty feet north of the depot, there is, on the premises of the appellant, a platform, bordered by a concrete curb next to the railway tracks. And from the north end of this platform, a pathway leads off in a northeasterly direction, crossing a couple of storage sidetracks, to an intersection with the public highway above mentioned. By using the railroad platform and this pathway, persons desiring to pass from that part of the town west of the tracks near the depot, to that portion of the town on the east side of the tracks and northeast of the depot, were able to lessen the distance as compared with the route of the public highway; and it appears from the evidence in the record that the people of Pine Knot almost universally used this route *via* the depot platform in passing between the two mentioned portions of the town. This platform immediately in front of and near the depot was constructed of lumber, but to the north of the depot, it was made of gravel.

Frogg had been working on a job of railroad grading, but on the day in question, it being a Saturday, he did not work in the afternoon. He was at his father's distillery and drank some whiskey about two o'clock and then left. His father says that he was drinking but not drunk. He returned about half-past three, and again left, and went to Pine Knot. His father lived about three-quarters of a mile north of the Pine Knot depot.

The evidence for the plaintiff conduces to show that Frogg was at the home of Fred Smith on the west side of the tracks and rather south of the Pine Knot depot, on the night in question; that he left there to return to that portion of the town on the other side of the tracks

(in doing which he would ordinarily have walked north along the depot platform); and that in a period of time which was about sufficient for him to have reached the depot, a freight train came into Pine Knot from the south.

As this train passed the depot platform, going north, a noise or jar attracted the attention of the engineer; the train came to a stop, and Frogg's body was found lying on the gravel extension of the platform, north of the depot.

A fracture of the skull an inch above and two inches in front of the left ear had produced instant death. His left shoulder was bruised, and there were a number of bruises on his left side and down his back and on his left hip; and the skin had been knocked off the left shin bone in three or four places. The back of his left coat sleeve was torn, and there was a torn place in his trousers over the left hip.

An iron step attached to the cab of the locomotive (used in mounting to the cab) had been torn from its fastenings, and broken into several pieces, and these pieces were lying near where Frogg was found. One of these weighed ten or twelve pounds. A hole had been torn in the concrete curb which ran along in front of the platform next to the tracks. This hole was about fifty feet south of where the body was found.

The curb mentioned was about 20 to 24 inches in height and 20 to 22 inches from the track; and the step of the locomotive cab when in proper position cleared the curb about six inches.

No one saw Frogg killed; but it was the theory of the plaintiff that the cab-step was loose, and dropping down struck the concrete curb, breaking it into pieces, and that these flying pieces of the step struck and killed him, as he was walking north along the depot platform.

On the other hand, it is the contention of the railway company that a peremptory instruction should have been granted in its favor at the close of plaintiff's evidence, upon the ground that there was no evidence showing liability on its part.

It has been held that to authorize a recovery in cases like this, it is not essential that there should be direct evidence from the mouths of eye witnesses to the occurrence; that the manner in which the accident happened, as well as the negligence of the railway com-

pany, may be established by circumstances. Southern Railway v. Caplinger's Admr., 151 Ky., 749, 152 S. W., 947.

In L. & N. R. R. v. Taylor's Admx., 158 Ky., 633, 166 S. W., 199, Taylor was struck and killed by a freight train. No one saw the occurrence; but Taylor was seen starting up the track. A train followed him. The marks made on the cross-ties by the heels of his shoes, the condition of the cinders between the rails, and the wounds on his body all showed that he was struck from behind by the train and dragged quite a distance. It was sought to be contended in that case that Taylor was probably killed in an attempt to board the moving train; but this court held that in view of the physical facts, the jury was justified in reaching the conclusion that he was killed in the manner above stated.

The evidence in the case at bar, however, does not so clearly point to the actual manner of Frogg's death. The apparently fatal weakness in the theory of the plaintiff rests in the number and distribution of the wounds on the body. The step was undoubtedly broken into several pieces; and this was doubtless caused by its striking the concrete curb as contended by plaintiff; but, that all or practically all of those pieces should have continued to fly through the air for a distance of fifty feet and all or practically all of them strike Frogg, as must have been done to have caused the number of wounds found on his body, does not seem conceivable.

It seems to us that it is just as reasonable a theory (if, indeed, it be not more reasonable) to say, as defendant theorizes, that Frogg was struck while sitting on the curb, and that this knocked the step loose and caused it to tear up the concrete curb. All the wounds were on his left side; and had he been sitting on the curb, his left side would have been nearer to the approaching train. If he was killed in this way, the number and distribution of the wounds on his body and the tearing of his clothes is more satisfactorily accounted for than by the theory that a number of the pieces struck him practically all over the left side of his body; especially as some of the wounds were on the front of the body and some on the back, although all on the left side thereof.

It seems to us therefore that this case is one which demands the application of the doctrine that where the evidence leaves us in the position of having to theorize

as to the manner in which deceased met his death, and the theories advanced are equally plausible, one involving negligence on the part of the defendant and the other freedom from such negligence, and both arising upon mere conjecture, a recovery cannot be had. Caldwell's Admr. v. C. & O. Ry., 155 Ky., 609, 160 S. W., 158; Osborne's Admr. v. C. N. O. & T. P. Ry., 158 Ky., 176, 164 S. W., 818; Bell's Admx. v. C. & O. Ry., 161 Ky., 466, 170 S. W., 1180; Woodburn v. U. H. L. & P. Co., 164 Ky., 29, 174 S. W., 730; L. & N. v. Chambers, 165 Ky., 736, 178 S. W., 1101.

2. Over the objection of the defendant railway company, a witness, Cross, was permitted to testify that he was present at the inquest held by the coroner over the body of Frogg; that he saw two men there whom people said were the engineer and conductor of the train in question; that one of the men so pointed out to him testified on that inquest that the cab-step was loose when he examined it at Robbins or Glenmarrow, stations south of Pine Knot. This testimony was not corroborated in any way; in fact (though we are not now considering the evidence of defendant's witnesses) this witness was contradicted by all the other witnesses who were present at the inquest, including the magistrate who presided.

The conductor and engineer of the train were joined with the railway company as defendants in the action; and if this witness had been able to identify either as the person who had so testified upon the inquest, the evidence in question would have been admissible against the person who had so testified, but against him alone. But as the witness was unable to identify the person who had so testified, and no other witness aided his testimony by connecting the statement so testified about, with either of the defendant trainmen, the evidence in question was incompetent, even as against either of those defendants; and in no event was it competent against the railway, and being incompetent, it was of no assistance to the plaintiff upon the consideration of the defendants' motion for a peremptory instruction.

The judgment is reversed with direction to direct a verdict for the defendants if upon a second trial the evidence should be substantially the same as on the first trial.