## Louisville & Nashville Railroad Company v. Cook.

(Decided February 7, 1919.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

Railroads—Death of Person On or Near Track—Negligence—Evidence—Sufficiency.—In an action against a railroad company for death of a pedestrian on a public street, evidence held insufficient to warrant a finding of negligence.

MOORMAN & WOODWARD, BENJAMIN D. WARFIELD and JAMES J. DONOHUE for appellant.

ELMER UNDERWOOD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for personal injuries, plaintiff, Edward R. Cook, recovered of the defendant, Louisville & Nashville Railroad Company, a verdict and judgment for $5,500.00. Defendant appeals.

The only question we deem it necessary to consider is whether the trial court should have sustained defendant's motion for a peremptory instruction.

The evidence is as follows: Plaintiff lived on Dumesnil street in the western part of the city of Louisville. On Saturday evening, November 4, 1917, plaintiff left his home and reached 18th and Dumesnil streets about 7:30 o'clock. There he caught a car for 18th and Market streets. He then went to a saloon at 15th and Market, were he was joined by Joe Thorp. After stopping at certain saloons and taking several drinks of beer, they went to a flat at 136 West Market. According to Thorp, it was then about 10:20 p. m. They were invited into the kitchen and Cook drank two bottles of beer.

Later on, they went into the parlor, where Cook drank some whiskey. In about thirty minutes, Cook became so intoxicated that he did not remember anything that subsequently occurred. Thorp says that they left the house about 12:20 a. m. After going downstairs, Thorp asked Cook to wait until he went back to say something to one of the women. Thorp was gone for only a minute or two and when he returned Cook had disappeared. At that time, Cook was drunk and staggering. Failing to find Cook, Thorp assumed that he had taken a car and gone home. About five o'clock the next morning, Cook was found by some railroad men on Fulton street, between Jackson and Preston streets. Fulton is a public street of the city and is paved with granite blocks from curb to curb. Defendant's track is on the north side of the street. Though there is no paved sidewalk on this side of the street, there is a beaten path lying between the curbstone and the defendant's track. There were weeds along this pathway, and also along the defendant's track. Only two engines are shown to have passed over this track on the night of the accident. Engine No. 341 passed by itself about 11:05 p. m., en route to the Barrett Manufacturing Company, and returned about 11:15 p. m. with two cars attached. Engine No. 2023, with seven cars attached, passed some time between 2 a. m. and 2:30 a. m., and returned with several cars some time between 4:30 a. m. and 5 a. m. On their return the crew heard some one call. The engine was stopped and they discovered Cook lying between the track and the north fence, with both legs badly mashed and some cuts on his head. Cook was then taken to the city hospital where his legs were amputated. On the first trip made by engine No. 2023, the headlight was burning and the speed of the engine was from four to six miles an hour. There was some evidence that the bell was not ringing, and very slight evidence that a proper lookout was not kept. Plaintiff was not seen by anybody after he left Thorp at 136 West Market. He did not remember how he got to the place of the alleged accident, or where he was, or under what circumstances he was struck. Prior to the time he was found, he regained consciousness several times but only for a short period. The last time he became conscious he threw out his arm and struck one of the cars attached to engine No. 2023. The car was standing still.

He then called for help and was discovered by the train crew. A physician testified that his legs had been run over by a train, and that if he was unconscious he could not have attempted to board the train. There was further evidence that there was a circular wound behind plaintiff's ear, and that beneath the tender of the engine there was a brake rigging or iron bar, the end of which corresponded in size and shape to the wound. There was no proof, however, that any blood was found on this iron bar or any other part of the engine. On the contrary, there was evidence that the engine was examined and no blood was found thereon. Defendant also showed that a proper lookout was kept and that the bell on the engine was being rung.

It may be conceded that, as the place of the accident was in a public street, defendant was charged with the duty of giving reasonable warning of the engine's approach and of keeping a proper lookout. And, though we further concede that there was sufficient evidence to make defendant's failure of duty in these respects a question for the jury, this would not be sufficient to make out a case unless the plaintiff further showed that such negligence, if any, was the proximate cause of his injury. To meet this requirement, plaintiff offers the theory that he was lying unconscious on the track, and therefore in a position to have been seen if a proper lookout had been kept. It is argued that this theory finds support in the fact that plaintiff was unconscious and could not have been injured in an attempt to board the train or to pass between the cars, and the fact that the brake rigging corresponded in size and shape to the wound on plaintiff's head was an additional circumstance showing that he was run over by the engine. The argument that plaintiff was not in condition to attempt to board or pass between the cars loses its force when it is remembered that he had sufficient power of locomotion to go for a distance of a half mile before the place of accident was reached, and the mere fact that the brake rigging corresponded in size and shape to the wound on plaintiff's head, without further proof that such rigging bore external evidence of having come in contact with someone, carries with it no probative force whatever. It merely shows a bare possibility that plaintiff was run over by the engine, without carrying with it that quality of proof

sufficient to induce conviction. Doubtless, if the wheels and other portions of the machinery and rigging under the cars had been examined with the same care, and with the same end in view, other rigging or machinery would have been found which might have produced the injury. In cases like this, a recovery cannot be had on mere surmises, or speculation as to how the injury might have happened. If the injury may as reasonably be attributed to a cause that will excuse the defendant, as to a cause that will subject it to liability, then the plaintiff cannot recover. For aught that appears, plaintiff may have been riding on the train, or he may have attempted to board the train or pass between the cars, and have thus been injured. The proven facts are as consistent with this theory as with the theory that he was on the track when the engine approached. Under these circumstances, there was nothing to submit to the jury and the trial court erred in refusing the peremptory asked by the defendant. Stuart's Admr. v. Nashville C. & St. L. Railway Co., 146 Ky. 127, 142 S. W. 232.

Judgment reversed and cause remanded for a new trial consistent with this opinion.