## Chesapeake & Ohio Railway Company v. Preston's Administratrix.

(Decided March 19, 1929.)

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

MAY, ALLEN & MAYO for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

In the early afternoon of January 2, 1926, the fire-man of appellant's train No. 1429 discovered the body of Win Preston stooping or leaning against a high cliff on the west side of the railroad. When the train had been stopped and the witness reached the body, it had fallen into the ditch six feet or more from the rail. Members of the crew testified that the body was neither hot nor cold, and one of them expressed the opinion that Preston had been dead about half an hour. The body was much bruised and several bones broken. The deceased's false teeth were found 50 or 75 feet north of his body, but whether on or off the track does not appear. A neighbor who went to the scene shortly after the discovery of the body testified that it was warm. This witness during the cross-examination by appellant's counsel volunteered the opinion that the deceased had been struck by a train, as he "saw signs of where his body dragged the ground." There was no evidence of any blood or other indication of the exact place or of how Preston came to his death.

On account of the death, Preston's administratrix recovered judgment against the appellant railway company for $2,000, and its reversal is sought solely on the ground that the trial court erred in not giving a peremptory instruction in its favor. All other questions are expressly waived.

The petition alleged that, while the deceased was passing across the tracks of the company on a passway reserved by him in his conveyance of the right of way, and used by the public, and at a place where the presence of persons was to be expected, and while Preston was in plain view of the trainmen operating a train having engine No. 1434, he was, by reason of their negligence, run over and killed; that the trainmen knew, or by the exercise of ordinary care could have known, of his presence upon the tracks at that crossing and could have avoided striking him; and that they negligently failed to keep a lookout for the presence of deceased on the tracks, and failed to give signals of the approach of the train to the crossing, as required by statute. An amended petition alleged in the alternative that train No. 1434 or No. 1329 had killed him.

These allegations were traversed, and a plea of contributory negligence interposed.

At the place the double tracks of the Chesapeake & Ohio Railway run in a northerly and southerly direction near the bank of the Big Sandy river on the east and with a high cliff on the west. Limestone branch comes from the west, and runs under the tracks at a point estimated to be from 125 to 175 feet north of where Preston's body was found. Preston owned 100 acres of land lying on both sides of the river and railroad. His home and most of his tillable land was on the opposite side of the river from the railroad, but he owned some rough land up Limestone branch. When he conveyed the right of way to the railroad company, it agreed to construct and maintain upon and across the tracks a crossing at or near Limestone branch. It is not certain that there was any such crossing ever constructed, but there is abundant proof that some years ago there was a passway somewhere near the point the body was found which was used, not only by Preston and his family, but by a great many people. However, it appears that practically all of this travel had ceased, and the evidence does not show that the crossing was being used at the time plaintiff's intestate met his death or had been used in recent years by the public to such an extent as to be regarded as a public crossing or to place the burden upon the defendant of maintaining a lookout at that place. It does appear there was a footpath crossing the tracks diagonally near the point, and that it was occasionally used by the deceased and others. The trainmen and other employees of the railroad company testify that they had no knowledge of any crossing at that point, and consequently did not give the signals required upon approaching a public crossing.

The conditions at the place are very similar to those described in Chesapeake & O. Railway Co. v. Hunter's Adm'r, 170 Ky. 4, 185 S. W. 140, as a private crossing within a farm. At such a place, as stated in the opinion in that case, the railroad company is not obliged to give a signal or warning of the approach of trains, and owes to persons at the place only the duty to use ordinary care to avoid injuring them after discovering them to be in peril. Many authorities are cited in the Hunter case, and they need not here be directly referred to.

It is appellee's theory that Preston was struck on the crossing by train No. 1434, which had passed going southwardly 20 or 25 minutes before the body was found. Stress is laid in appellee's brief on the fact that deceased's false teeth were found on the crossing. The evi-

dence as to finding the teeth does not disclose just where they were picked up with reference to the crossing. The manner of death is left to conjecture.

The deceased was 76 years old, but, according to members of his family, his sight and hearing were unimpaired, and he was otherwise an active, vigorous man. He left his home between 12 and 1 o'clock, and walked across the frozen river, but his destination does not appear. At the place where his body was found, the tracks form a broad curve with perpendicular rocks on the west and the river on the east. A person on the track at that point can see a train approaching from the north twelve to thirteen hundred feet away.

The engineer and brakeman of the train which appellee contends killed Preston testified that they were maintaining a lookout when the train passed the place, but did not see deceased or any other person there, and had no knowledge of having struck any one. After proceeding about 10 miles to Prestonsburg they received a message as to finding the body and inquiry as to whether they knew anything about it. The engineer, because of the length of his engine and the fact that he was on the outside of the curve next to the cliff, could not see very far, but the brakeman, who was at his station immediately in front of the fireman's seat, testified he could see 1400 feet ahead. The fireman was no longer in the service of the company, and could not be located at the time of the trial.

The courts cannot enter the realm of speculation and upon some possibility, theory, or assumption permit a recovery for a tortious act. It is a thoroughly established rule in the law of negligence that, where an injury or death may from the facts and circumstances be as reasonably attributed to a cause that will excuse a defendant as to a cause that will subject him to liability, the former will be presumed. To state the rule differently: Where the evidence is equally consistent with the absence as with the existence of negligence as the proximate cause of injury, the plaintiff has failed to make out a case to submit to a jury.

There is an entire absence of proof of any sort of negligence on the part of the railroad company. If it should be conceded that Preston was killed by a train, the company was not required to disprove negligence or to overcome any presumption of negligence. We have

recently reviewed cases involving the death of a trespasser on a railroad and the difference between inference and conjecture. Louisville & N. Railroad Co. v. Mann's Adm'r, 227 Ky. 399, 13 S. W. (2d) 257. The mere fact that a person is found dead at or on a railroad, whether it be at or near a public crossing, is not in itself sufficient to authorize the submission of the case to the jury. Stuart's Adm'r v. N., C. & St. L. Ry. Co., 146 Ky. 127, 142 S. W. 232.

A case of this character stronger on the facts than the instant one is Early's Adm'r v. L., H. & St. L. Ry. Co., 115 Ky. 13, 72 S. W. 348, 24 Ky. Law Rep. 1807. Several cases are cited in the opinion and this declaration of the law, which has been repeated many times, was made:

> "There is no presumption of negligence against the appellee, any more than there is a presumption of contributory negligence on the part of the deceased. It was incumbent on the appellant to prove negligence on the part of appellee's servants in charge of the train, or facts from which such negligence could properly be inferred."

An elaboration of this terse statement, also frequently quoted, may be found in Hughes v. Cincinnati N. O. & T. P. Railway Co., 91 Ky. 526, 16 S. W. 275, 13 Ky. Law Rep. 72.

In Strock's Adm'r v. L. & N. Ry. Co., 145 Ky. 150, 140 S. W. 40, there was no eyewitness to the death of a man apparently struck by a train on a street crossing, and the inference of negligence on the part of the railroad company was more reasonable than in this case, but a directed verdict for the railroad company was held proper. Many cases supporting that conclusion are cited, and a number of pertinent quotations made from former opinions, which need not be incorporated in this one. This well-established rule has been consistently followed. Subsequent cases in which dead bodies have been found on or near railroad tracks and the rule applied in actions for recovery, are: Bell's Adm'x v. C. & O. Railway Co., 161 Ky. 466, 170 S. W. 1180; Caldwell's Adm'r v. Chesapeake & Ohio Ry. Co., 155 Ky. 609, 160 S. W. 158; Osborne's Adm'r v. Cincinnati, N. O. & T. P. Ry. Co., 158 Ky. 176, 164 S. W. 818, Ann. Cas. 1915D, 449; Weidekamp's Adm'x v. Louisville & N. R. Co., 159 Ky. 674, 167 S. W. 882; Cincinnati, N. O. & T. P. Ry. Co. v. Frogg's Adm'r, 167 Ky. 6, 179 S. W. 1062; Sutton' s Adm'r v. Louisville

& N. R. Co., 168 Ky. 81, 181 S. W. 938; C. &. O. Ry. Co. v. Stephen's Adm'r, 168 Ky. 775, 182 S. W. 938; Johnson's Adm'x v. Mobile & O. R. Co., 178 Ky. 108, 198 S. W. 538; Louisville & N. R. Co. v. Cook, 183 Ky. 773, 210 S. W. 661; Louisville & N. R. Co. v. Stidham's Adm'x, 187 Ky. 139, 218 S. W. 460; Gregory's Adm'x v. Director General, 195 Ky. 289, 242 S. W. 373; Louisville & N. R. Co. v. Vanover's Adm'r, 203 Ky. 390, 262 S. W. 606; Daugherty's Adm'r v. Louisville & N. R. Co., 206 Ky. 325, 267 S. W. 151; Chesapeake & Ohio Ry. Co. v. Goodman's Adm'x, 218 Ky. 117, 290 S. W. 1055.

It follows from what we have said that a peremptory instruction should have been given the jury to find for the railway company. If upon another trial the evidence is the same, the court will direct such a verdict.

Judgment reversed.