## Wiley's Administrator v. Chesapeake & Ohio Railway Company.

(Decided December 6, 1929.)

C. F. SEE, JR., for appellant.

BROWNING & REED, W. J. ROBERTS and KIRK & WELLS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

Carrie Wiley was between 30 and 35 years of age and resided up to the time of her death in Louisa, Ky. The record does not disclose that she had any relatives. She did occasional domestic work, but had been partially maintained at the county poor house in Lawrence county and at times was given lodging in the police headquarters of that town. The appellee and defendant below, Chesapeake & Ohio Railway Company, maintains a track over which it operates its trains on Jefferson street in that town, which runs east and west, and is crossed at about the center of the town by Madison street. Near 11 p. m. on November 23, 1927, Carrie Wiley's body was found on the track under the first car immediately behind the tender of a freight train traveling west at a point

about 70 feet west of the junction of Madison and Jefferson streets. The plaintiff and appellant, Harvey Church, qualified as her administrator and brought this action in the Lawrence circuit court against defendant to recover damages for her death, which he alleged in his petition was the result of negligence on the part of defendant. The answer denied the negligence charged in the petition and contained a plea of contributory negligence on the part of deceased, which was denied by reply, and at the close of the evidence introduced by plaintiff the court sustained defendant's motion for a peremptory instruction in its favor, followed by a judgment dismissing the petition—to reverse which plaintiff prosecutes this appeal.

Harvey Wellman was engaged in business in Louisa on Madison street, but he resided on Jefferson street some three or four blocks east of Madison street. He testified that between 8:30 and 9 p. m. on the evening of the fatal accident he left his place of business and was going to his residence, and when about a block and a half east of Madison street he met the deceased traveling on the sidewalk of Jefferson street going toward the depot at the junction of Madison and Jefferson streets; that something like a block after passing the deceased he passed a freight train going west, and that it was, perhaps, traveling as much as 15 or 20 miles per hour, although he stated that the train traveled only three blocks while he walked two; that just as he opened the door of his residence he heard, in the direction of the depot, a crashing noise like a collision, or the sudden stopping of the train, but that he made no investigation at the time and did not know what produced the noise. Other witnesses for plaintiff, some of whom were close to the scene of the accident while others were farther away, testified to the same noise of a freight train at about the same point that Wellman thought it was, but they fixed the time at about 11 p. m. on the same day.

A number of witnesses testified that the headlight of the engine was burning, but that they heard no bell or whistle as the train approached the crossing at Madison street, but each of them expressly stated that they were not listening for any such signals, and that each of them may have been given without their notice. Nothing unusual was testified to by any witness concerning any particular train on that night, except one witness thought that from the sound one of them was making as it ap-

proached the depot it was traveling, perhaps, some faster than was usually the speed of trains passing through the town. There was no watchman or any mechanical device at the junction of Madison and Jefferson streets to warn travelers having occasion to pass over the crossing.

Four nearby witnesses introduced by plaintiff testified that, in the neighborhood of 11 o'clock on that night, they heard the sudden crash or noise of the train as above indicated, and one of them was sleeping upstairs immediately opposite the point (which was about 70 feet west of the crossing of Madison street), and he testified that he was asleep and the sudden noise awoke him and he went to his window and saw the operators of the train with flashlights, apparently in search of something, and that he then saw some bulky object under the car immediately next to the tender, and which was later discovered by the trainmen and proved to be the body of the deceased. No witness testified to any wounds upon her body or any bruises indicating upon what part of it the train struck her if it did do so. Neither was there any testimony of any blood on the track between the point where her body was found under the car and the crossing 70 feet away; nor was there anything on the track to indicate that her body had been dragged any distance whatever.

In an unbroken line of cases we have held that in actions of this kind a recovery cannot be had where the cause of the accident producing the injury, or the manner of its occurrence is a matter of surmise, conjecture, or speculation, and which principle is bottomed upon the theory that one may not have enforced compensation from another without proof of some invasion by the alleged wrongdoer of the legal rights of the injured one, and which is but another way of saying that judgments must be supported by testimony of material facts to uphold them. If there is no such testimony it is the duty of the court to so inform the jury by directing it to return a verdict in favor of the alleged wrongdoer. Some of the latest cases announcing that principle are: Strock's Admr. v. L. & N. R. Co., 145 Ky. 150, 140 S. W. 40; Stuart's Adm'r v. N. C. & St. L. Ry. Co., 146 Ky. 127, 142 S. W. 232, 234; Caldwell's Adm'r v. Ches. & Ohio, Ry., 155 Ky. 609, 160 S. W. 158, 159; Sutton's Adm'r v. L. & N. R. Co., 168 Ky. 81, 181 S. W. 938; Cincinnati, etc., R. Co. v. Frogg's Adm'r, 167 Ky. 6. 179 S. W. 1062;

Johnson v. M. & O. R. Co., 178 Ky. 108, 198 S. W. 538; L. & N. R. Co. v. Cook, 183 Ky. 773, 210 S. W. 661; Gregory's Adm'x v. Dir. Gen., 195 Ky. 289, 242 S. W. 373; L. & N. R. Co. v. Stidham's Adm'x, 187 Ky. 139, 218 S. W. 460; L. & N. R. R. Co. v. Vanover's Adm'r. 203 Ky. 390, 262 S. W. 606; Daugherty's Adm'r v. L. & N. R. R. Co., 206 Ky. 325, 267 S. W. 151; C. & O. Ry. Co. v. Goodman's Adm'x, 218 Ky. 117, 290 S. W. 1054.

Illustrating this court's position in such cases we insert this excerpt from the opinion in the Stuart case, supra: ''A recovery cannot be had on mere surmises or speculations as to how the injury that is complained of happened; nor will it be presumed that the defendant was guilty of actionable negligence. If the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability then the well-settled rule is that a recovery cannot be had.'' In the opinion in the Caldwell case the rule and the reason therefor were thus stated: ''The most that can be said of the evidence is that it presents several states of case upon which one may theorize as to the cause of the decedent's death, any one of which is as plausible as the other, and all arising upon mere conjecture. A recovery cannot be had on speculation as to how the injury complained of occurred; nor will it be presumed in such a case that the appellees were guilty of actionable negligence. If the injury may as reasonably be attributed to a cause that will excuse them as to a cause that will subject them to liability, then the well-settled rule is that a recovery cannot be had. In the instant case, the evidence as a whole fails to show whether the death of appellant's intestate was due to the negligence of the appellees, his own negligence, or that of either. In other words, the cause of the death is purely a matter of conjecture.'' The other cited cases will be found to fully support the principle contained in the excerpts from the Stuart and Caldwell cases, and it would serve no useful purpose to elaborate thereon in this opinion. If in this case there was a frontal collision of the train with the body of the deceased, the fact that it so suddenly stopped would indicate that it was not traveling at a fast speed, and the fact that there was no indication whatever of any collision at any other point than where the body was found likewise tends strongly to prove that deceased was not on the crossing at the time she was struck. But, however that may be, the tes-

timony heard in this case furnishes as strong an example for the application of the principle of the cited ones as could well be imagined. For ought that appears in the record the deceased may have been asleep upon the track, or she may have intentionally placed herself within the wake of the train, or she may have been engaged in an effort to board the train, or she may have suddenly attempted to cross the track immediately in front of the train when it was too late for its operators to prevent the collision. Perhaps other causes for the unfortunate occurrence might be surmised, and all of which illustrates the soundness of the rule adopted by this court in such cases.

To have submitted the case to the jury under the facts testified to by plaintiff's witnesses would have been, not only in utter disregard of our applied rule, but also would have, in effect, said to the jury: "You may return a verdict against defendant although there is no evidence that it was negligently responsible for the tragic death of the deceased, or that she was free from any negligence contributing thereto." The cases cited by counsel for plaintiff do not support his argument that this case should have been submitted to the jury, since the testimony in them was materially different from that appearing in this record. We therefore conclude that the court did not err in directing the verdict complained of and in dismissing the petition as a result thereof.

Wherefore the judgment is affirmed.