MEADOR *v.* NASHVILLE, C. & ST. L. RY.

(*Knoxville,* September Term, 1940.)

Opinion filed March 4, 1941.

Joe Frassrand and H. F. Newton, both of Chattanooga, for plaintiff in error.

Walton Whitwell and Wm. H. Swiggart, both of Nashville, and Spurlock, Spears & Noone, of Chattanooga, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Plaintiff instituted this suit against the defendant to recover damages for the alleged wrongful death of her husband, her cause of action being based upon the alleged violation of subsection (4) of section 2628 of the Code, which is as follows:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

The burden of proof was upon the plaintiff to establish the fact that deceased appeared upon the track

as an obstruction. *Cincinnati, N. O. & T. P. R. Co.* v. *Brock,* 132 Tenn., 477, 178 S. W., 1115. Unless this was done, there was not made out the *prima facie* case that would place, in turn, upon the defendant the burden of showing that it had complied with this precautionary statute. *Preslar* v. *Railroad,* 135 Tenn., 42, 185 S. W., 67; *Chesapeake Railroad* v. *Crews,* 118 Tenn., 52, 99 S. W., 368; *Railway Co.* v. *Howard,* 90 Tenn., 144, 19 S. W., 116.

█ The trial court sustained the motion of the defendant for a directed verdict upon the ground that plaintiff had not made out a *prima facie* case by showing that deceased appeared upon the track as an obstruction. Upon appeal, the Court of Appeals affirmed the judgment of the trial court.

A brief outline of the facts are as follows: Deceased was seventy-one years old. He lived in an easterly direction from Chattanooga on the Jenkins Road at a distance of thirteen miles. He was drawing an old age pension of $18.50 per month. His wife had been confined to her bed with a broken hip since April 16, 1939. He had worried a great deal over his wife's condition, and it was telling on him and he had become absent-minded. On Friday, October 27, 1939, plaintiff asked deceased to go to Chattanooga and place an advertisement in the paper for a house, but he declined to go. The request was repeated the next day with the same result. That night deceased asked his son for his best pants, but for what purpose no one knows. Deceased went to bed that night as usual. Sometime between ten and eleven o'clock he got up and slipped off without saying anything to anyone. It does not appear whether or not he put on his best pants. About midnight Herbert McDaris, a neighbor, while driving his automobile toward Chattanooga, observed deceased standing on the side of the road fac-

ing it. McDaris observed a walking cane in his hand but could not tell which way he was traveling. He was about two miles west of his home on the Jenkins Road and three miles from where the Brainard Road crosses the viaduct over defendant's railroad. McDaris was the last person who saw deceased alive. The most direct route from the home of deceased, and the one usually traveled, was over the Jenkins Road until it intersects with the Brainard Road and then over the latter road across said viaduct to Chattanooga. The distance from the Brainard viaduct to Chattanooga is about eight miles. One-half mile north of said viaduct the Lee Highway viaduct crosses defendant's railroad. To get from the Brainard viaduct down to the track one has to descend a 28-foot embankment. The railroad track between these two viaducts is heavy ballast, making walking on the track or crossties difficult. This ballast extended two feet beyond the end of the crossties, and there was no path on either side of the track, but it appears that several feet from the end of the crossties the ground is smooth and is good for walking. The body of deceased was discovered about noon the next day on the track about halfway between these two viaducts. The cane of deceased was first found on the side of the track, then the cap and next his head, all on the east side. His body was fifty feet down the track, having been drug that distance between the rails. Says the Court of Appeals:

"The fact that the dead body was found between the rails, having been dragged along the track, without other evidential facts, raises no presumption that he was an obstruction while alive upon the track and was killed by the train."

The witnesses who viewed the physical situation and the location of the different parts of the body testified

that they could not suggest how deceased ·came to his death. There is no evidence that he had ever been seen walking this track. If he was enroute to Chattanooga and descended the embankment at the Brainard viaduct, it would have made the journey one mile further.

In *Nashville, C. & St. L. Ry.* v. *Sutton,* 21 Tenn. App., 31, 104 S. W. (2d), 834, 840, *certiorari* denied by this Court, it appears that deceased was accustomed to walking the railroad track in going to and from his home. As to the facts in that case, we quote the following excerpts from the opinion of Judge FAW:

"It is an obvious inference from the record facts that the body of Sutton, either dead or alive, was dragged northward along the railroad track by one of defendant's trains, and, as a result, was mangled and mutilated. It is also a reasonable inference from the condition of Sutton's body when found at 3:45 o'clock A. M. on July 24th, that he had been dead and mangled and mutilated for a period of several hours theretofore. . . .

"We are of the opinion that the verdict in this case depends upon surmise, speculation, and conjecture. No witness in the record saw Sutton on defendant's railroad at any place alive after he and Bradford left the railroad at Pittman's crossing before 6:00 o'clock in the afternoon of July 23d."

The opinion concludes with this language:

"We think the record presents a series of probabilities as to the manner in which Jim Sutton was killed, and a case should not be left to a jury simply on a question of probabilities. *Virginia, etc., Railway Co.* v. *Hawk* [6 Cir.], 160 F., 348-352.

"A verdict cannot be based on speculation, surmise, or conjecture. *Chicago, etc., Railroad Co.* v. *Coogan,* 271 U. S., 472, 46 S. Ct., 564, 70 L. Ed., 1041, 1045; *De Glopper*

v. *Railway & Light Co.*, 123 Tenn., 633, 648, 134 S. W., 609, 33 L. R. A. (N. S.), 913; Moore on Facts, vol. 1, sec. 596, p. 596; *Buckeye Cotton Oil Co.* v. *Campagna,* 146 Tenn., 389, 242 S. W., 646.

" 'The act which caused the injury and the negligence of defendant in relation to the act' cannot 'be inferred from the accident itself.' *De Glopper* v. *Railway & Light Co., supra,* 123 Tenn., 633, at page 648, 134 S. W., 609, 612, 33 L. R. A. (N. S.), 913.

"It results that defendant's assignments of error are sustained, the judgment of the circuit court is reversed, the verdict is set aside, and the plaintiff's suit is dismissed."

In *Nashville, Chattanooga & St. Louis Railway* v. *Mrs. Willie Tunnell*, White Law, in which an opinion was filed at Nashville on June 20, 1925, it appears that Mrs. Tunnell's husband left his home in Sparta Sunday morning, May 13, 1923, at about nine-thirty and was not seen thereafter until his dead body was found the next morning at five o'clock adjacent to the railroad track in the suburbs of Sparta. This railroad ran from Sparta up the mountain to some mines and had many curves in it.

Deceased was found lying on his back with his head against the outside rail of a sharp curve. He was on the left-hand side of the track going up the mountain. There was a deep gash in the left side of the head, a large bruise under his chin, and a cut under one eye. The gash referred to was a depressed fracture made with some blunt instrument that crushed the skull. There were cuts in his coat. The hat of deceased was found in the middle of the track twelve feet further up the mountain from his body with fresh cuts in the brim. Some thirty-three feet beyond the hat, and in a ditch four feet from the left-

hand rail, were found portions of deceased's nose glasses. A recovery in that case, as in this, was sought for failure to comply with the lookout statute quoted hereinabove. In denying liability, this Court said:

"The burden was upon the plaintiff to show that the deceased did appear upon the track, or was so near to it as to become an obstruction.

"We have considered the evidence with great care with a view of determining whether the original plaintiff had carried this burden.

"In Jones, The Law of Evidence, 3rd Edition, sec. 899, the author says:

" 'A theory cannot be said to be established by circumstantial evidence either in a civil or a criminal case, unless the facts and circumstances shown are not only consistent with such theory, but absolutely inconsistent with any other rational theory.'

"In *Knoxville Railroad* v. *Wyrick*, 99 Tenn., 500 [42 S. W., 434], and similar cases, recoveries were sustained, but in all of those cases the deceased persons were seen upon the track before struck, and upon the rule of presumption that they continued upon the track it was held that where it appeared that death had resulted from being struck by the train the plaintiffs had carried the burden of showing that their intestates appeared as obstructions.

"But this rule of presumption does not obtain in the instant case for the reason that there is no evidence that the deceased was seen upon the track, or anywhere near thereto.

"Able counsel representing the administratrix have been unable to produce a single case supporting a recovery where the deceased was not seen upon or near to the track.

"On the other hand, the following cases hold that in a case similar to the one here involved the plaintiff has not carried the burden and cannot recover: *Virginia, etc., Ry. Co.* v. *Hawk,* [6 Cir.], 160 F., 348; *Russell* v. *St. Louis S. W. Ry. Co.* (1914), [113 Ark., 353], 168 S. W., 135; *Stuart's Administrator* v. *Nashville, C. & St. L. Ry.* (1912), [146 Ky., 127], 142 S. W., 232; *Caldwell's Administrator* v. *Chesapeake & O. Ry. Co.* (1913), [155 Ky., 609], 160 S. W., 158; *Louisville & Nashville R. Co.* v. *Cook* (1919), [183 Ky., 773], 210 S. W., 661; *Bickerstaff* v. *Illinois Cent. R. Co.* (1923), [210 Ala., 280], 97 So., 842; *Cumberland & P. R. Co.* v. *State to Use of Millslagle* (1890), [73 Md., 74], 20 A., 785 [25 Am. St. Rep., 571]; *Clegg* v. *Southern Ry. Co.* (1903), [132 N. C., 292], 43 S. E., 836; *Hamilton* v. *Kansas City Southern Ry. Co.* (1913), [250 Mo., 714], 157 S. W., [622], 623; *McCombe* v. *Public Service Ry. Co.* (1920), [95 N. J. L., 187], 112 A., 255.

"These decisions are based upon the theory that the burden being upon the plaintiff to show an obstruction by substantive evidence that, in the absence of such a showing, the jury will not be permitted to conjecture or speculate or surmise as to how an accident may have occurred."

The *Circuit Court of Appeals in Virginia, etc., Ry. Co.* v. *Hawk, supra,* [160 F., 355] in discussing the unreported Tennessee case of *Hackney* v. *C., N. O. & T. P. Ry. Co.,* said: "There was no evidence that he was on the track or within striking distance of a train at any time. The case was stronger than here, in that no blood was found upon the track or signs that anything had been dragged along it by the train. It might be claimed that it was weaker, in that the body was found off the track, and not

on it, as the tendency of a train striking a body in front of it is to throw it from the track.''

In the present case, it is impossible to form any intelligent conclusion as to the method by which deceased was killed. It can be accounted for in numerous ways if we should engage in conjecture and speculation. It is sufficient to state that plaintiff has not carried the burden of proving that deceased appeared alive on the track in front of a moving train.

For the reasons stated, the writ is denied.