HORACE CROWE, Adm'r Estate of J. D. CROWE, Deceased,
v. BIRMINGHAM & NORTH WESTERN RAILWAY CO.

Western Section. December 8, 1925.

Certiorari denied by Supreme Court, June 5, 1926.

1. **Evidence. Circumstantial evidence in civil case.**
Facts may be established by circumstantial evidence in civil as well as criminal cases.

2. **Evidence. Circumstantial evidence. Facts and circumstances relied on must not only be consistent with theory relied on but must be inconsistent with any other reasonable theory.**
When a party relies on circumstantial evidence to make his case, the facts and circumstances shown by the evidence and relied on to sustain his theory must not only be consistent with that theory but must be inconsistent with any other reasonable theory.

3. **Evidence. Evidence held sufficient to make a prima-facie case that deceased was killed by defendant's train.**
Where deceased a man about 65 years old walked to town on defendant's tracks and was last seen starting home with a sack of ground coffee and a package of onion sets and evidence showed he was hard of hearing

and that engine blew whistle a number of times and then train stopped and backed up and deceased was found beside track and ground coffee and onion sets scattered between rails for about 15 feet **held** evidence sufficient to make a prima-facie case that deceased was killed by defendant's train.

Appeal in error from Circuit Court, Crockett County; Hon. Thomas E. Harwood, Judge.

Reversed and remanded.

Cowan & Burgess, of Memphis, for plaintiff in error.

Pearson & Hewgley, of Jackson, and Avery & Avery, of Alamo, for defendant in error.

SENTER, J. This is an action for damages brought by the Administrator of the estate of J. D. Crowe, deceased, against the Birmingham & North Western Railway Company for the death of J. D. Crowe, because of the alleged wrongful and negligent killing of the deceased by running one of its engines and train of cars against him, and knocking him off of the track of the defendant, from which the deceased suffered injuries resulting in his death. The declaration is in one count, and may be treated as a declaration alleging statutory liability under sub-section 4 of section 1574 of Shannon's Code.

At the conclusion of plaintiff's evidence the defendant Birmingham & North Western Railway Company made a motion for a peremptory instruction by the court to the jury to return a verdict for the defendant railway company. The motion for a peremptory instruction was based upon two grounds as follows:

"First: That there is no competent or material evidence in the record from which the verdict and judgment in favor of the plaintiff could be based; and,

"Second: Upon the ground that it has not been shown that the deceased J. D. Crowe was ever upon the railroad track ahead of the train so as to be an obstruction, and it has never been shown that he was within striking distance of the railroad track so as to become an obstruction and to place upon defendant the burden of showing the observance of the statutory precautions."

This motion for a peremptory instruction was sustained by the court, and the jury accordingly instructed to return a verdict for the defendant, Birmingham & North Western Railway Company.

A motion for a new trial was made by plaintiff below and overruled, and from the action of the court in overruling and disallowing the motion for a new trial, plaintiff below excepted and has appealed to this court, and has assigned errors as follows:

"1. The court erred in holding that there was no material evidence introduced by the plaintiff in this case to show that J. D. Crowe, deceased, appeared on the track of defendant as an obstruction.

"2. The court erred in holding that there was no evidence introduced by the plaintiff in this case to show that J. D. Crowe, deceased, appeared upon the track of the defendant as an obstruction.

"3. The court erred in sustaining a motion of defendant for a directed verdict in favor of defendant Birmingham & North Western Railroad Company, and in directing the jury to return a verdict in favor of the defendant.

"4. The court erred in dismissing plaintiff's suit at the end of plaintiff's proof in chief, and in not requiring defendant to show that it complied with the statutory precautions in this case."

These assignments of error raise but the single question, and that is whether or not the undisputed facts as shown by plaintiff's proof made out a prima-facie case that the deceased was struck and killed by one of the defendant's locomotives while he was an obstruction on the track, or within striking distance of the locomotive and train.

The facts as shown by the proof of witnesses offered by plaintiff may be summarized as follows. The deceased J. D. Crowe, at the time of his death was a farmer living about four miles southeast from Bells, Tennessee, and near the railroad of defendant. On the day of his death he had walked into the town of Bells and in so doing walked on the railroad track from a point near his home to the town of Bells. About three or 3:30 o'clock P. M., he purchased from a store in Bells ground coffee and onion sets, which were put up in two separate paper bags; that after making this purchase he was seen in the town of Bells with these two packages, one under each arm. The Birmingham & North Western tracks cross the tracks of the L. & N. Railroad Company at a point about one-half mile east or northeast of the business portion of the town of Bells. The deceased was last seen alive in the town of Bells near the L. & N. Railroad tracks about 3:30 P. M. o'clock on the afternoon of his death. The track of the Birmingham & North Western Railroad Company is not ballasted and the space between the rails was generally used as a walkway by persons walking on the track of the defendant railroad company, and it would appear that there was a well-beaten path in the center of the track made by persons walking on the track between the rails.

It appears that the roads were muddy at the time, and that deceased in going to Bells that day walked on the railroad track. A passenger train of the defendant railroad company left the station in the town of Bells at about 4:00 P. M. o'clock going southeast toward Jackson. It appears that on the day of the death of the deceased that when this passenger train had proceeded to a point about two and one-half miles east or southeast of the town of Bells going toward Jackson, the whistle blew several times in succession, "seven, eight or ten times," and shortly came to a stop, and then backed to a point about 800 feet east of the east end of the curve.

CROWE v. RAILWAY CO. 637

At this point certain passengers on the train, and part of the train crew, found the deceased lying on the left hand or east side of the track, about five or six feet east of the east rail. He was then unconscious and lived but a few moments. The train crew placed the body in the baggage coach and the train was backed to the station at Bells, where the remains were turned over to an undertaker. He had some abrasions or contusions or cuts on his face; a small cut over one eye, a cut or tear on one ear, and scratches on his face, and a cut or contusion on the back of the left hand. These wounds were the only wounds visible until the embalmer removed his clothing in preparing the body for embalming, it was then found that he had a considerable bruise on his back, just over the kidneys, ''about the size of a man's hand.'' The embalmer found a considerable quantity of blood and water in the bladder, which caused the embalmer to examine his back when the bruise over the kidneys was found.

At the point where the deceased was lying when picked up by the train crew and placed in the baggage car, and in between the rails on the track, was found a considerable quantity of onion sets and ground coffee scattered for a distance of about 15 feet along the track and between the rails of the track and two paper bags, one containing a few onion sets and the other a small quantity of ground coffee. These paper bags were found on the outside of the rail two or three feet east of the east rail and near where the body was lying. It was also shown that the hearing of the deceased was seriously impaired, requiring the use of an ear trumpet in talking to him. He was a man of about sixty-three years of age at the time of his death, industrious and of good habits. The rate of speed at which the train was running at and before the blowing of the whistle is not shown; nor is it shown that there was a railroad crossing in the vicinity of where the train stopped, nor a railroad station in that immediate vicinity. It was shown by one witness, who visited the scene on Monday morning following the death of the deceased on Saturday afternoon, that he found a pair of eye glasses at a point near where the weeds and grass showed something to have lain or fallen, and also found onion sets along the track as had been testified to by other witnesses who were present at the time the body was picked up and put into the baggage coach. It was this witness who measured the distance from that point to the east end of the curve and found it to be something over 800 feet. This witness also stated that in the track between the rails immediately opposite the point where he found the eye glasses that he saw the imprint of what appeared to be the heel of a shoe, but could see no other tracks; this heel track seemed to indicate that the heel had turned and was pointing somewhat to the west. The life expectancy and earning

capacity of the deceased were shown, as well as the fact that he had surviving children.

The defendant did not offer any proof, as the motion for a directed verdict was made and sustained at the conclusion of plaintiff's evidence.

The question presented on this appeal is, whether or not under the facts and circumstances as above set forth there was any material evidence to the effect that the deceased was struck by the train of the defendant, resulting in his death, and if at the time he was an obstruction on the track, or within striking distance of the engine of the train. Was the evidence sufficient to make out a prima-facie case of liability under the statute, sub-section 4 of section 1574 of Shannon's Code?

Before there could be a recovery in this case it would have to appear from the evidence, and circumstances that the deceased was struck (and death resulted), by the engine or train of the defendant railroad company while he was an obstruction on the track or was within striking distance of the train. Until the plaintiff has shown this fact, either by direct evidence, or by such circumstances as fairly prove the fact, he has failed to make out a prima-facie case, putting the burden of proof on the railroad company to prove that the statutory requirements had been complied with. Railroad v. Hall and Cooper, 5 Higgins, 498;

"Facts may be established by circumstantial evidence in civil as well as criminal cases." Welton v. Burchell, 121 Tenn. 715.

Each case must be considered and determined upon the peculiar facts and circumstances of the particular case.

"When circumstances in evidence point to a conclusion of fact in such manner as to justify the finding of such fact, it cannot be said that a jury acting on such circumstantial evidence and finding facts thereon were left to guess, or speculate, as to probabilities." Railroad v. Hall and Cooper, supra.

In applying the general rules to cases of this character the courts have analyzed all the facts and circumstances shown by the evidence, and unless it appears that the circumstances and facts relied upon are sufficient to prove that the person struck by the train, or alleged to have been struck and killed by a moving train, are sufficient to make out a prima-facie case by the plaintiff, the courts have sustained a directed verdict in favor of the defendant. If upon an examination of all the facts and circumstances it appears that the injury or death could be reasonably explained upon some theory other than that the deceased was an obstruction on the track in the sense of the statute, a motion for a peremptory instruction to return a verdict in favor of defendant should be sustained.

The facts and circumstances shown by the evidence and relied upon by plaintiff to sustain the theory that the deceased was in fact an obstruction on the track or within striking distance of the train, within the meaning of the statute, must not only be consistent with the theory that the deceased was on the track, and an obstruction on the track in the meaning of the statute, but must be inconsistent with any other reasonable theory.

To state it differently, the plaintiff is required to make out a prima-facie case either by direct evidence or by such circumstances as is the equivalent of direct evidence that the deceased was at the time not only struck and run over by the train or some part of the train, but that he was at the time an obstruction on the track, or so near to the track as to be within striking distance of the locomotive or some part of the train.

Applying these general rules to this case it becomes necessary and proper to analyze the facts and circumstances relied upon by plaintiff in error to sustain the theory that the deceased was in fact an obstruction on the track and as such obstruction was struck and killed by an engine or train of the defendant.

In this case we have an elderly man, a farmer, living near the tracks of the defendant railroad company and about four miles distant from the town of Bells; that the roads were muddy, and that in going into Bells on that day of his death he walked on the railroad track; that on the afternoon of his death he purchased ground coffee and onion sets, which were put up in two separate paper bags; that he left the business portion of the town of Bells about 3:30 P. M. and started toward the L. & M. Railroad tracks; he was not seen on the B. & N. W. Railroad tracks until he was found by the side of the track in an injured and dying condition; onion sets and ground coffee were found scattered and strown along the track for a distance of about 15 feet at and near where he was found lying; the onion sets and coffee were scattered along for this distance in between the rails. If these constituted all the facts and circumstances tending to establish plaintiff's theory it would be insufficient. The fact that he had walked into Bells on the railroad track from a point near his home on that day, and that he purchased onion sets and coffee while in Bells, and the further fact that he was last seen about 3:30 o'clock P. M. in the town of Bells, and not on the tracks of the B. & N. W. Railroad and was found lying by the side of the railroad track in an injured condition about 4:30 or 5:00 P. M. o'clock, injured in the way and manner that the proof showed; and that his hearing was badly impaired, would be consistent with the theory that he was struck by the train of defendant and that he was an obstruction on the track, but these facts and circumstances would not be inconsistent with the theory that he received his injuries in some other way and manner, or

that he was not an obstruction on the track in the sense and meaning of the statute.

But these are not the only facts and circumstances shown by the evidence. It appears from the record that one of defendants trains left Bells going in the direction of Jackson, and which is in the direction of the deceased's home, at about 4:00 P. M.; that when this train had proceeded a distance of about 2½ miles the locomotive whistle blew several times in succession; "seven, eight or ten times;" that the brakes of the train were then applied, and the train came to a stop, and then backed up west a distance of about 200 or more yards, when it again stopped and the deceased was then found lying near the left hand or east side of the track in a dying condition. This was at a point about 800 feet east of the east end of a curve in the track. Why the whistle of the locomotive was blown several times at that point, and the brakes of the train applied and the train brought to a stop a short distance beyond where the deceased was found lying is not explained. In the absence of an explanation it is quite reasonable to infer that the engineer running the engine, saw the deceased on the track and was blowing the whistle to attract his attention so that he would step off of the track and out of the way of the approaching train. Again it appears that there were onion sets scattered along between the rails for a distance of 15 or 20 feet near the point where the deceased was found lying, and also two paper bags near the same point containing a few onion sets and some coffee.

It is entirely reasonable to infer, in the absence of any other explanation, that these were the same onion sets and coffee which the deceased had purchased in Bells shortly before leaving for home and which he was seen carrying in his hands or under his arms. The onion sets and coffee were scattered between the rails, and some of each along the side of the track at and near the point where deceased was found and where the paper bags were found. It is true the evidence did not show any tracks between the rails at or near this point indicating that a person had been walking there, except the heel track hereinbefore referred to. It appears from the evidence that this railroad track was not ballasted, and that it was much used by pedestrians, and was dirt between the rails and the ties. The fact that it was considerably used by persons walking on the track because of the muddy condition of the roads would be a circumstance indicating that the dirt between the rails was more or less packed as would be a dirt path; the fact that tracks were not found in the dirt between the rails is a circumstance tending to show that the dirt had become packed as a path and persons walking on the beaten path between the rails would not leave a track, if this were not true as much walking and passing

as there was on this railroad as shown by the proof there would have been tracks between the rails.

Another fact and circumstance to be looked to and considered is the age and habits of the deceased, especially with reference to the probability or lack of probability of his attempting to board the train while it was running, and receiving his injuries in that way. It appears that the deceased lived only a short distance, perhaps a mile and one-half, beyond where the body was found. Is it at all probable that a man of his age would have attempted to jump on or board a passenger train running at the usual speed at which passenger trains would ordinarily run between stations, in order to ride it the short distance to his home? What would have been the actuating incentive for such an act upon the part of the deceased, considering his age and habits?

It does not appear that there was a road crossing in the vicinity of where the deceased was found. The fact that the deceased was very hard of hearing, and that his hearing was seriously impaired, is another material circumstance to be considered. While this would be a material fact that he was guilty of contributory negligence, or greater negligence, of walking on the railroad track with that physical infirmity as he would be less likely to hear a train approaching from behind. But it is also a material circumstance in support of the theory of plaintiff that he was an obstruction on the track and is a circumstance tending to explain why he did not hear the train approaching from behind him and why he did not hear the several blasts from the whistle of the locomotive. It is, therefore, a circumstance tending to support the theory of plaintiff that he was at the time walking down the railroad track, and was an obstruction on the track and was struck by the locomotive from behind, and that he did not see or hear the approaching locomotive, or the whistle of the engine.

We think that all these facts and circumstances, when considered collectively, brings this case within the rule as stated in Railroad v. Hall and Cooper, supra, wherein it is said by the court:

"And when circumstances in evidence point to a conclusion of fact in such manner as to justify the finding of such fact, it cannot be said that the jury acting on such circumstantial evidence and finding facts therefrom was left to guess or to speculate as to probability."

An examination of the various cases cited where the court has held that a motion for a peremptory instruction was properly granted or should have been granted will show that in each of the cases that the facts and circumstances relied upon were either inconsistent with the theory that the deceased was an obstruction on the track within the meaning of the statute or was not incon-

sistent with some other reasonable theory as to how he could have come to his death.

In the case of R. R. Company v. Hawks, 87 C. C. A. 300, cited and quoted at length by appellee in the brief in this case, the facts in that case as set out in the opinion discloses that the deceased was a young man 19 years of age. The last time he was seen alive was about 8:00 o'clock on the evening before his remains were found on the railroad track the next morning, he was then in Bristol, Tennessee, walking up Main street. The railroad runs from Bristol to Bluff City, a distance of about twelve miles. The remains of the deceased were discovered the next morning about 7:30 o'clock on the railroad track at a point about three and one-half miles north of Bluff City and about seven or eight miles from Bristol. His body was lying between the rails with the top and back of his head mashed, and one wrist and one leg broken. Towards Bristol from where the body was found a pistol was found lying in the center of the track, and opposite it about four feet from the track a hat was found. The pistol and the hat were found thirty or forty feet from where the body was found; there were on the rail and the end of ties some spattered brains, and small pieces of skull and some blood; and some evidence that the rock ballast on the track seventy-five to one hundred feet from where the body was lying, and towards Bristol from the body, was torn up; fifteen feet from the first place where it was torn up there was flesh and hair against the side of the rail; twenty-five feet from there was a pool of blood and brains and hair along the outside rail. It was shown that a train had passed from Bluff City to Bristol leaving Bluff City at about 9:45 the evening or night before the body was found, and a train had passed from Bristol to Bluff City that morning, leaving Bristol at 4:00 o'clock that morning. In that case the engineer and other witnesses testified for the defendant railroad company. The engineer of the train that passed the point at 4:30 A. M. testified that it was then getting light and that he had a good head-light on his engine, that the train was running at about 20 miles an hour, and the engineer was on the inside of the curve and could see about 100 feet ahead. It is also stated in the opinion that there was no question but that this was the train which struck and killed the deceased. The engineer testified that he was on the lookout and had his eyes on that particular place because considerable stock grazed at that place; that he saw no one; that when his train reached Elizabethtown, a station on that road, in pursuance to a telephone message from the Superintendent of the railroad, he examined the engine carefully and found no blood or flesh on it. It was held in that case that the only circumstances and facts proven in the record in support of the theory that plaintiff was struck while an obstruction on the track, was that

the body was found dead on the track, and the blood and brains on the rails, and the finding of the pistol and hat, and the torn and disturbed condition of the ballast. The court in that case held that "no inference could be drawn from those facts that the deceased before he was struck appeared on the road in front of the train that struck him as an obstruction. They have no fitness to induce conviction of such fact."

It can readily be seen from the above facts that it was entirely consistent with reason and probability that the deceased in that case was attempting to board the train while it was running and was drawn under the train; or with the theory that he was riding on some part of the train and fell off, either between the cars or on the rods, or the brake beam or some other portion of the train.

In the case of Patton v. T. & P. R. R. Company, 179 U. S. 658, cited and quoted from by appellee in the brief, it is said:

"And where the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half dozen causes."

Of course the court stated the law properly, if, as stated by the court in that case "the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is liable and for some of which he is not."

Appellee in his brief also cites and quotes the opinion of this court in the case of Southern Railway Company v. Cook, opinion by Mr. Justice Owen of this court. In that case the record showed that a boy 17 years of age in the possession of his faculties and of good eyesight and hearing was found dead or in a dying condition near the railroad tracks of the defendant railroad at a point about one and one-quarter miles west of Bull's Gap, a station and junction point on defendant's railroad. He was killed about 9:00 A. M. o'clock. The deceased lived about a mile north of the point of where his body was found. It appeared that he had followed a path that lead from his home down to the railroad track; this path ended at the railroad track, it did not cross the track. It also appeared that there was a dirt road running parallel with the railroad. It also appeared in that case that on the morning of the death of the deceased the railroad company had a train consisting of about 65 empty cars drawn by a locomotive which for reasons set out in the opinion was being drawn by the locomotive attached to the train of empty cars with the tender in front; that shortly after the deceased was seen going toward the railroad track following the path which led to the railroad track this train whistled, and

that the deceased was walking rapidly toward the railroad, that there was a considerable grade at the point where the body of the deceased was found and that this train was running slowly going up this grade. No one saw the deceased on the railroad track; he was last seen going toward the track following the path and but a short distance from track, and that the train passed about the same time.

There were no physical evidences that the deceased was walking on the track and was run down by the train, or that he was an obstruction on the track. The injuries resulting in his death consisted of one leg being broken just above the ankle; his right leg broken and crushed, and according to some of the evidence in the case bent up under the body; he had a small bruise or wound just above the right hip. A short distance west of where the body was found and near the end of the ties there was some blood; and about five and one-half feet west of where the body was found there was a small piece of cloth torn from the lining of the deceased's coat which was found caught under the head of a spike driven in the cross ties. No tracks of the deceased were found within the rail; there was no indication between the rails that the deceased had been dragged; no blood was found within the rails or on the rails. The shoes of the deceased were muddy, having upon them a whitish clay. None of this mud was found upon the tracks; the track was ballasted; the ballast extending out about 18 inches beyond the end of the cross ties. The pants of the deceased and the leggins worn by him at the time were mangled. His coat and shirt were not mangled. Because of the mud it was easy to track the deceased from his home down the path to the railroad. The last track appeared about two feet from the end of the ties.

In the above case it was held by the court that the facts and circumstances were not inconsistent with the theory that the deceased met his death by attempting to jump onto the train for the purpose of riding into Bull's Gap where he had started. The train consisted of a number of empty cars and was being pulled by a locomotive in reverse position, the engine backing with the tender in front and was then going up grade, and was not running at a fast rate of speed. In the absence of any positive or direct proof that the deceased was an obstruction on the track it was more probable, perhaps, that he received the injuries resulting in his death while attempting to jump on the train from the side of the track than that he was an obstruction on the track, and struck from behind. This is especially true for the reason that he was in full possession of his faculties for hearing and seeing, and it is more probable than otherwise that he would have seen or heard this train approaching from behind if he had been walking on the track. We think that the court correctly held in that case

that the facts and circumstances were insufficient to make out a prima-facie case of liability under the statute.

Without reviewing further the numerous cases on the subject, it is sufficient to say that each case must be governed by the peculiar facts and circumstances surrounding the particular case. It is true that "a theory cannot be said to be established by circumstantial evidence, either in a civil or criminal case, unless the facts and circumstances shown are not only consistent with such theory, but absolutely inconsistent with any other rational theory." 10 R. C. L., p. 1007. But in the instant case we think the facts and circumstances are entirely consistent with the theory that the deceased was an obstruction on the track, and that he was struck and killed by the train of the defendant. We further think that any other theory would be inconsistent with the facts and circumstances of this case. It is certainly not reasonable to suppose that this deceased, a man of good habits, and 63 years of age, attempted to board this passenger train at a point between stations, and especially since he only lived about a mile or mile and one-half beyond the point where he was killed. There could have been no incentive for such an act. The further fact of his impaired hearing is entirely consistent with the theory that if he was walking on the track he would not have heard this passenger train approaching from behind. The nature of the wounds found on his body, and especially the bruise over his kidneys, which was evidently the cause of his death, is consistent that he was struck by some part of the train approaching from behind, and is inconsistent with any other theory. In fact no reasonable theory, or one at all consistent with the circumstances, has been suggested, which would explain the circumstances under which this man met his death. Without reviewing the facts and circumstances further, we are of the opinion that the learned trial judge was in error in sustaining the motion of defendant in error for a peremptory instruction, and that for this reason the case is reversed and remanded to the circuit court of Crockett county. The defendant in error, Birmingham & North Western Railroad Company, will pay the costs of this appeal.

Heiskell and Owen, JJ., concur.