WESTERN & ATLANTIC R. R. *v.* LAND *et al.*

(*Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

534

SPURLOCK, SPEARS, REYNOLDS & MOORE, of Chattanooga, and WALTON WHITWELL, of Nashville, for complainant.

BERKE and FLEMING, of Chattanooga, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The defendants in error, Louis H. Land and wife, who will later be referred to as plaintiffs, sued the W. and A. Railroad in the Circuit Court of Hamilton County for damages for the negligent killing of their daughter, Velma Katherine Land.

The original declaration contained three counts, the first a common law count, the second charged a violation of, or failure to comply with, Code Section 2628, Subsection 4, and third for alleged violation of an ordinance of the City of Chattanooga. The plaintiffs moved the court to require the railroad to disclose its real defenses, which it did, and in its response claimed that the deceased at no time appeared alive as an obstruction upon its tracks in front of its train or locomotive. There were other special defenses which will not be considered.

The case was tried in the Circuit Court under the second count of the declaration, the sole issue being whether or not the deceased appeared upon the railroad track as an obstruction, and did those in charge of the train comply with the mandatory provisions of the Statute. At the conclusion of the plaintiffs' proof, and again at the conclusion of all the proof, the defendant moved the court for a directed verdict upon the ground that there was no evidence to show that deceased appeared upon the railroad track alive as an obstruction in front of a moving train. The motion was overruled and the jury returned a verdict for the plaintiff for $12,500. The trial judge overruled defendant's motion for a new trial but suggested a remittitur of $5,000, which was accepted.

An appeal was prayed and granted to the Court of Appeals and that court reversed and dismissed the case upon the ground that there was no evidence to sustain the verdict. While the court discussed a number of questions its final conclusion was that the defendant railroad had by competent and credible evidence rebutted the *prima facie* case of the plaintiff.

We granted *certiorari* and the case has been heard on oral argument.

The plaintiffs' counsel assigned error to the action of the Court of Appeals in reversing and dismissing the case and the defendant assigned counter errors in pretermitting certain of its assignments. We pretermit the defendant's assignments and will consider only the plaintiffs' assignments, which are as follows:

(1) The Court of Appeals was in error in reversing the verdict of the jury and the judgment of the trial court because the disputed facts were properly submitted to the jury and approved by the trial court.

(2) The Court of Appeals was in error in reversing the judgment of the trial court and dismissing the suit, for the reason that the defendant failed to show that it had complied with the imperative demands of Code Section 2628, Subsection 4, commonly known as the "Lookout Statute".

The first assignment does not comply with Rule 14 of the Court, which requires appellants to point out specifically errors complained of. The second by mere inference (nothing is pointed out with any particularity) complains that the Court of Appeals erred in holding that the defendant had rebutted the presumption that the deceased appeared as an obstruction upon the railroad track in front of a moving train; that this *prima facie* pre-

sumption disappeared in the face of affirmative evidence to the contrary.

The deceased, Velma Land, was struck by a moving train (whether she was in front of the engine when struck does not appear) at Elmendorf Street crossing in the suburbs of Chattanooga. Her body was carried several hundred feet beyond the crossing toward Atlanta, and was badly mutilated. Parts of her clothing were found upon the track, and also parts of her body, between the rails; blood was found at the crossing and nearby on the rails. The torso was not on the track when discovered but was some distance away.

The mother of the deceased was the last person to see her daughter alive. She testified that she had for some time prior to October 14, 1945, contemplated a trip to Nashville and planned to take with her the deceased, Velma Katherine, also her youngest daughter. On the evening of October 13th three of the children had been to a picture show and returned home about 8:00 or 8:30 o'clock, but Velma remained at home. About 1:30 of October 14th, Velma Katherine, who had retired, arose and went out for fifteen or twenty minutes. It does not appear where she went or for what purpose. Upon her return she informed Mrs. Land that she was going out again to use the telephone to ascertain at what time the train left for Nashville. This was about 2:55 in the morning. Her mother accompanied her to the sidewalk, where she stood and watched Velma as she approached and apparently entered upon the Elmendorf Street cross-ing of the defendant railroad. According to Mrs. Land the intention of Velma was to go to the Blanchard and Company plant, which was some distance beyond the crossing, to use the telephone. The witness at no time

claimed that her daughter stopped on the crossing. On direct examination she said: "Yes, she went on and I stood on the sidewalk and you could see right to the railroad, there is a light there and I seen her when she got on the crossing and about that time this train . . . and I didn't see her anymore."

"Q. Did you know the train had hit her? A. No, Lordy, no, I didn't know the train had hit her. Didn't have the least idea."

She thought the girl "had sufficient time to have gotten across the crossing." The train which she mentioned as passing at the time was a passenger train. After watching her daughter, as above stated, Mrs. Land went back in the house and "laid down and dozed off." She learned later of her daughter's mangled body being found upon and near the railroad track.

It is conceded by the plaintiff that the girl never reached the Blanchard plant. The Court of Appeals found as a fact, and it is not disputed, that parts of the girl' body were found along the track between the rails, south of the crossing, or towards Ringgold, Georgia. In the light of these facts she could not have been struck by a train from the south and moving in the direction of Chattanooga. We therefore eliminate from our consideration the possibility of any accident and injury resulting from any train moving toward Chattanooga. The defendant introduced testimony which showed beyond any doubt that the passenger train, which passed about 3:20 a. m., and mentioned by Mrs. Land, did not strike the child. The engineer and fireman on this train both testified they kept a proper lookout at the crossing and no one was on the crossing. Moreover the crew of a freight train, headed for Chattanooga, and which had

taken to a side track to let the passenger train pass, testified to having discovered the mangled body before the passenger train arrived. We are hence forced to the conclusion that she was struck by a train which preceded the passenger train, and of course going in the direction of Atlanta. Now according to the defendant's time table, which was kept by a man in a tower located three and one-half miles from the crossing, the train which passed ahead of the passenger train was a freight train No. 43 and passed at 2:18 a. m., October 14, 1945. He testified that passenger train No. 3 from Chattanooga to Atlanta passed at 3:15 a. m. on October 14, 1945. The witness filed a complete schedule which he kept of all trains which passed in both directions on the night of October 13th from 11:49 p. m. until 5:07 a. m. October 14th. We have conclusively shown that the passenger train was in no way involved in the accident. The child was dead when this train arrived upon the scene. It is therefore unnecessary that we make any reference to any train that passed after 3:15 a. m. October 14, 1945.

Under the foregoing undisputed facts we cannot find otherwise than that Mrs. Land was incorrect in saying that a passenger train struck her daughter. While not saying so in so many words she left the impression that it was such a train since it passed about the time her daughter entered upon the crossing. That the girl was not struck by any passenger train was proven beyond any possible doubt. It results that there can be no recovery based upon the contention that she appeared as an obstruction in front of a moving passenger train.

Our next inquiry is, did she appear as an obstruction in front of freight train No. 43 which passed over the crossing in advance of the passenger train at 2:18 a. m.

The importance of Mrs. Land's testimony was to place Velma Land on the defendant's track in front of a moving train as an obstruction She placed her upon the crossing very definitely in front of the passenger train. This couldn't be true and plaintiffs' counsel concedes it. He argues that she may have been mistaken as to the kind of train it was, since passenger coaches are not lighted at that hour of the night. If however we accept this as a theory we would have to conclude that she was also mistaken as to the time of night the train passed. We think that liability should not rest upon such uncertainties, and especially so in view of Mrs. Land's positive testimony that the train she saw was a passenger train.

While it is our plain duty to consider the evidence in the most favorable light to support plaintiffs' case, and the most unfavorable for the defendant, the evidence should be stronger than a mere "glimmer", or "scintilla". It may be that Velma Katherine Land was killed by some train of the defendant; if so it was freight train No. 43 which passed at 2:18 ahead of the passenger train. But there is no evidence that the child appeared on the track as an obstruction in front of this train. The railroad track at the Elmendorf crossing was straight for approximately two miles. The engineer, Smith, testified he was on the lookout and that no object appeared on the track in front of his engine, and that he struck no one. Plaintiffs' counsel sought to weaken his statement on this point in cross-examination by eliciting from him the remark that "if I have to get up to get me a drink, something like that," he might for the moment not look, but "I usually keep a lookout all the time." When his entire testimony is examined we find that he

was very positive that he was on the lookout ahead at the crossing. When asked on redirect examination why he remembered looking ahead at the point where the girl was killed, he stated that when his train reached Kingston, Georgia he had a message requesting him to inspect his engine to see if it showed any signs that it had struck anything, and his mind was thus challenged as to what he was doing when he passed Boyce Station. There is undisputed evidence to show that this train was inspected in Atlanta and there was nothing to indicate that the engine had been in any kind of an accident. There is no escape from the conclusion that there would have been blood on the engine had it struck the deceased and ground her body under its wheels.

The railroad is taken to task for not offering the fireman as a witness to corroborate the engineer, or to show that he also was on the lookout. But as said in reply by defendant's counsel the law only requires one lookout and the engineer needed no corroboration. It was claimed that Jones, the fireman, was not available to testify.

It is urged upon us by counsel for the plaintiff that by reason of the undisputed facts a presumption arises, or should be indulged, that the deceased appeared alive as an obstruction in front of defendant's train; that the evidence in rebuttal only makes an issue for the jury. In support of this contention we are referred to *Williams* v. *L. & N. Ry. Co.*, decided on July 11, 1944, and *Law* v. *Louisville & N. R. Co.*, 179 Tenn. 687, 170 S. W. (2d) 360, *Nashville, C. & St. L. Ry. Co.* v. *Sutton*, 21 Tenn. App. 31, 104 S. W. (2d) 834. We do not think the presumption contended for in the instant case should be indulged, as was done in the first two cases cited, for

the reason that the deceased was never seen upon the track for any appreciable length of time. In the *Williams Case* and also in the *Law Case, supra,* the facts and circumstances warranted the reasonable conclusion that the deceased in each case was walking the track longitudinally and was necessarily an obstruction in front of an approaching train; that upon proof of these facts the plaintiff made out a *prima facie* case of liability under the Statute. In the case of *Nashville, & C. St. L. Ry. Co.* v. *Sutton, supra,* the Court of Appeals held that no presumption should be indulged as is contended for in the instant case. We think the latter case, CROWNOVER, J. dissenting in a brief opinion, does not support the plaintiff, but is authority strongly in favor of the defendant's theory. The plaintiff in the *Sutton Case* sought to bring it within the holding in the *Williams* and *Law Cases* by proof that at the point where Sutton was killed the track was used as a walkway by the general public. Notwithstanding these facts the Court held that there was no evidence that deceased appeared alive as an obstruction in front of the train.

In the case before us the deceased, Velma Land, was never seen walking along the track of the railroad. She was crossing the track to Blanchard, if we accept her mother's statement as true, which only required two or three steps. She could never have reached Blanchard's had she walked either up or down the track. All we have here is the finding of her mutilated body between the rails, which indicated that she was killed by a train. We cannot indulge the presumption that she was ever at any time in front of a moving train. As was said in the *Sutton Case,* 21 Tenn. App., at page 44, 104 S. W. (2d) at page 842: "It is a well-established rule that a pre-

sumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption cannot be deduced from another.''

■ This Court has never held that the mere discovery of a dead body upon a railroad track warrants a presumption that the person killed appeared alive as an obstruction in front of a moving train. The holding in the *Sutton Case*, in which *certiorari* was denied, is to this effect, also our own case of *Meador* v. *Nashville, C. & St. L. Ry.*, 177 Tenn. 273, 274, 148 S. W. (2d) 371 and cases there cited. In the latter case the body of the deceased, just as in the *Sutton Case* and the instant case, was found in a mutilated condition upon the railroad track.

The court found it ''impossible to form any intelligent conclusion as to the method by which the deceased was killed. It can be accounted for in numerous ways if we should engage in conjecture and speculation.'' In *Tenn. Central Ry.* v. *Maxwell*[1] (unpublished) filed January 17, 1942, it was held: ''The fact that the dead body was found between the rails, having been dragged along the track, without other evidential facts, raises no presumption that he was an obstruction while alive upon the track and was killed by the train.''

■ We are constrained to hold in the instant case that the only evidence offered in support of the plaintiffs' case was of such inconsequential probative value that it was fully overcome by the unimpeached testimony of the defendant. The court is never justified in refusing to direct a verdict upon a mere scintilla of evidence to sustain the plaintiffs' theory of the case.

---

[1]No opinion for publication.

The deceased, Velma Katherine Land, was acting strangely on the night in question. She had been adjudged a delinquent child, although this fact was excluded from the jury by the trial judge; she was gone from the house late at night for fifteen or twenty minutes, without any explanation, returning and retiring for the night; at 3 o'clock in the morning she aroused her mother from sleep with the statement she was going across the railroad track, to a place where she was unknown, to make a telephone call to find out about a train leaving for Nashville. There was nothing to show the urgent necessity of such a telephone call. The watchman at Blanchard's plant testified she never came to use the telephone, and had she done so he would not have permitted its use. Moreover if she was killed by the train it occurred at 2:20 a. m. or an hour before her mother says she left the house.

The verdict of the jury rests entirely upon the supposition that deceased was killed by the train of the defendant. We do not know of what manner she met her death. Of course we could speculate that she was alive and an obstruction on the track when the train approached, but solemn judgment must rest upon a firmer foundation. The plaintiffs' assignments of error are overruled and the judgment of the Court of Appeals is affirmed.

All concur.