**Margie GILREATH, Plaintiff-Appellant,**

v.

**SOUTHERN RAILWAY COMPANY et al., Defendants-Appellees.**

**No. 15041.**

United States Court of Appeals
Sixth Circuit.

Sept. 25, 1963.

A. E. Graves, Chattanooga, Tenn., De-witt T. Sneed, Jr., Chattanooga, Tenn., on brief, for appellant.

Dawson Hall, Chattanooga, Tenn., Whitaker, Hall & Haynes, Chattanooga, Tenn., of counsel, for appellees.

Before CECIL, WEICK and O'SULLI-VAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellant, Margie Gilreath, as widow of William Roy Gilreath, brought suit against defendants-appellees, Southern Railway Company and Alabama Great Southern Railroad Company to recover damages for his claimed wrongful death. The District Judge granted defendants' motion for a directed verdict made at the close of plaintiff's proofs. From the judgment entered upon such directed verdict, plaintiff takes this appeal.

This is a case where a person was found, fatally injured, lying between the rails of a railroad track, without (as the case stood when the verdict was directed) anyone claiming to have seen the fatal accident. The events involved occurred sometime around 11:00 o'clock on the night of May 12, 1958, in the City of Chattanooga, Tennessee. Plaintiff asserts that the evidence adduced in her case was sufficient to have permitted the jury to find that her husband was struck by a train operated by one of the defendant railroads after he had appeared as an obstruction on its track, and that such railroad failed to take the precautions then and thereby required by Tennessee Code Annotated, Sections 65–1208(4) and 65–1209.[1]

The answers of both defendants conceded that the prescribed precautions had not been taken, but claimed that they were not required, averring that the deceased, Gilreath, had at no time appeared as an obstruction upon the road over

---

1. T.C.A. § 65–1208(4):

"(4) Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

T.C.A. § 65–1209:

"Every railroad company that fails to observe the above precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to person or property occasioned by, or resulting from, any accident or collision that may occur."

which a train operated by either of them was proceeding. With such admission, a verdict should not have been directed for defendants, if at the time of the motion therefor there was sufficient circumstantial evidence from which the jury could find that the deceased was an obstruction in the path of a train and sufficient evidence from which the jury could find which of the defendants' railroads, if either, was the operator of the train which struck Gilreath. Defendants claim that plaintiff's proofs failed in both such regards.

The events here involved occurred upon that part of a railroad right of way owned by defendant Alabama Great Southern Railroad, lying between Main Street on the north and Rossville Boulevard on the south, both in the City of Chattanooga. Two main line tracks, running substantially north and south, traverse this area. In the proofs and upon a map exhibit, the east track was identified as main line Track No. 1 (the green track) and the west track identified as main line Track No. 2 (the yellow track). While there was evidence that trains operated in either direction on both tracks, Track No. 1 (green) was referred to as the northbound track and No. 2 as the southbound track. Trains of both defendants, as well as those of some other railroads, used these tracks.

The deceased Gilreath was 45 years old at the time of his death, apparently an unskilled workman whose current employment was that of a handyman. His immediate employer considered him an excellent worker. He was then engaged in performing odd job work because his regular employer, a house mover, had no work for him. He had no disclosed residence of his own in Chattanooga, but at times boarded at his sister-in-law's house in that city. His wife, the plaintiff, at the time here involved, lived in Alabama. He had worked at his handyman job on the day of his death and his then employer testified that he was to come back to work for her the next day. This lady had, at the end of his day's work, let Gilreath out of her car at her church parking lot around six o'clock in the evening. Gilreath was next seen around 7:00 o'clock the same evening at the house of a friend who lived south of the tracks above described. After visiting there for about thirty or forty minutes, Gilreath left, announcing that he was going to Main Street to get something to eat. He was next seen about 10:45 that evening, walking southerly along a footpath that led from Main Street to Rossville Boulevard, along the west side of the above described main line Track No. 2. The witness who then saw Gilreath, one Ware, was standing in a boxcar on a side track which served the plant of the Container Corporation. This plant was located on the east side of the railroad right of way and near to Rossville Boulevard. Ware was looking up the tracks to the north. Between Main Street on the north and Rossville Boulevard on the south, the railroad tracks did not run true north and south, but ran somewhat southwesterly and northeasterly. Gilreath, coming south, was followed by two companions [1a] and, as Ware looked, he observed a train "southbound" on the No. 2 (yellow) main line track, several hundred feet in back of Gilreath and his companions. Gilreath was then about 300 feet north from Ware. Ware watched Gilreath until he came about opposite him. Ware knew Gilreath and waved to him as he came by. Gilreath returned the greeting. Ware said that headlights of the approaching train shone on Gilreath, and the flasher signal and bell at the Rossville Boulevard crossing were in operation. When Ware last looked at him, the train was about 250 feet north of Gilreath. At that time, shortly before 11:00 o'clock, Ware turned to go into the plant. Ware's shift ended at 11:00. Ware went back into the Container Corporation plant, took a shower, and when he got out from under the shower he "began to hear a train bell ringing and a whistle blowing." Ware then went upstairs,

1a. These persons did not appear as witnesses, neither were they identified.

changed clothes and came out. Coming through the boxcar in which he had been previously standing, he saw a switch engine headed north on track No. 2 (southbound track). A crowd had gathered on the tracks. When he went over to see what had happened, he saw Gilreath's body lying on the westerly (southbound) main line track No. 2. Ware marked on an exhibit the spot where Gilreath lay between the rails of the track. He fixed the time of seeing Gilreath's body as about 11:20 o'clock. Ware further testified that there was a path along the west side of the main track where Gilreath had been walking and that to get to Polk Street (where Gilreath's sister-in-law lived, and who was expecting Gilreath that night) Gilreath would have had to cross the tracks from west to east. He said, "coming from the north side coming to the south side of the track [2] in that grass there is a pathway where you come to cross in front of the shipping department, come over the alley and you come out on Central Avenue. * * * People use that path to work, just the same as a street * * *. They had to cross the main track and the switch track too * * *. He still had to cross the railroad to get to Polk Street * * * he had to cross all three tracks to get to where I was."

Plaintiff's witness, James McCain, was the engineer on a Southern Railway switch engine and was going north on Main Line Track No. 2 around 11:00 o'clock on the night of Gilreath's death. He was the one who discovered Gilreath's mutilated body on the tracks. Contrary to Ware, he located Gilreath as lying between the rails of the northbound main line track No. 1 (green). McCain testified: "He was run over by a train, or something, that had cut—I believe it was his right leg—he was lying between the tracks * * *. There was a splotch of blood on the inside tracks, between the tracks * * *. His body was between the two tracks."

McCain went to the scene the next day to give information to the police "and tried to get a true picture of what had happened, and we found traces from where the blood was, where his body was lying almost across south of Rossville Boulevard. You could see traces of where the wheels or what you, drops, or maybe parts of flesh, small parts of flesh." Asked whether he found some pieces of fingers south of Rossville Boulevard, he stated, "We found something that looked like fingers, just small bits of flesh." McCain said his discovery of Gilreath's body occurred between 11:00 and 11:30 o'clock. This witness further testified that at about 11:00 o'clock he had observed one train going north on main line track No. 2 and also in the neighborhood of 11:00 o'clock he saw a freight train come south on main line track No. 1 (green).

In answer to a pretrial request for admissions, the defendant Southern Railway admitted that it "operated one train on May 12, 1958, in the neighborhood of 11:00 o'clock P.M. between Main Street and Rossville Boulevard * * * which movement was over and upon AGS (Atlanta Great Southern) northbound mainline track, being the mainline track nearest to the Container Corporation. There are two mainline tracks between Main Street and Rossville Boulevard * * * at said point and trains operate over in either direction over both tracks." [3] It was stipulated that Gilreath was admit-

2. Due to misinformation, some of the witnesses referred to the west side of the tracks as north and the east side as south.

3. Defendants assert that because the quoted admission was not, in addition to being on file, formally offered in evidence by plaintiff, it cannot be availed of as establishing the admitted fact. We find nothing in Rule 36, F.R.Civ.P. (Admissions) sustaining this position. We pass the procedural question, however, because defendants' counsel, in open court, admitted the fact involved when, in making the motion for direction, he stated, "there was an admission that the Southern Railway operated a train southwardly over the green track at about 11:00 o'clock."

ted to the hospital with the following injuries:

> "Laceration between the eyes, upper lip and lower lip, across neck, left thigh, left hip, left knee, amputation of right small finger and ring finger and part of middle finger; that x-rays revealed an oblique fracture of the eighth, ninth, tenth, and eleventh right ribs posteriorly near the vertebrae; the ninth was fractured four times, the posterior portion being displaced inferiorly; patient was partly conscious intermittently, but unable to talk coherently; he was found in shock, with no blood pressure or pulse; he had a crushed chest with paradoxal respiration on the left side; complete amputation of the right leg above the knee; chest full of rales; patient died about two hours after admission."

In their motion in the District Court, and on this appeal, defendants rely on two grounds which they say entitled them to a direction of a verdict. First, that there was not sufficient evidence from which the jury could find that Gilreath was an obstruction in the path of a train which struck him, and, second, that there was not sufficient evidence from which a jury could find which, if either, of the defendants was the operator of the train which struck and fatally injured Gilreath.

On this appeal, we must decide whether, from the foregoing testimony and circumstantial evidence, but without mere conjecture and surmise, a jury, as reasonable persons, could find that Gilreath had appeared as an obstruction in the path of the train which struck him, and that one or the other of the defendant railroads was the operator of such train.

**1. Do the proofs show that Gilreath was an obstruction on the road?**

 This suit was commenced in a state court of Tennessee, where the fatal accident occurred, and was removed to the District Court as a diversity case. Liability is planted on a Tennessee statute, T.C.A. § 65–1208(4). The law of Tennessee controls the substantive question of liability, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and we hold that Tennessee law should, in this case, be looked to on the question of the sufficiency of the evidence to permit a jury to find the facts essential to liability.[4] Under that law, the burden was on the plaintiff to establish a prima facie case that plaintiff's decedent was an obstruction upon the track, or within the sweep of the train, where he could have been observed by the train crew, Southern Railway Company v. Hutchings, 288 F.2d 837, 838 (C.A.6, 1961); Virginia & S. W. R. Co. v. Hawk, 160 F. 348, 349 (C.A.6, 1908); Meador v. Nashville, C. & St. L. Ry., 177 Tenn. 273, 274–275, 148 S.W.2d 371 (1947); Cincinnati, N. O. & T. P. R. Co. v. Brock, 132 Tenn. 477, 479, 178 S.W. 1115 (1915). Once a plaintiff has established such a prima facie case, the burden shifts to a defendant railroad to establish its compliance with the Tennessee Statutory Precautions Act (T.C.A. § 65–1208(4). Callaway v. Christison, 148 F.2d 303, 304 (C.A.6, 1945); Southern Railway Company v. Brooks, 125 Tenn. 260, 265, 143 S.W. 62 (1911). In deciding the question before us, we do not deal with questions of negligence, contributory negligence, or proximate cause. Tennessee Cent. Railroad Co. v. Binkley, 127 Tenn. 77, 86, 153 S.W. 54 (1912); Railroad Co. v. Davis, 104 Tenn. 442, 450, 58 S.W. 296; Illinois Cent. Co.

4. The Supreme Court has declined to announce a rule determinative of whether state or federal law should test the sufficieny of evidence as making a jury question. Dick v. New York Life Insurance Co., 359 U.S. 437, 445, 79 S.Ct. 921, 3 L.Ed.2d 935; see also Judge Cecil's observation in Price v. Firestone Tire and Rubber Company, 321 F.2d 725, (C.A.6, 1963). In this case, in which a statute peculiar to Tennessee is involved, we see no reason to re-examine our previous holdings that the state law should govern. O'Donnell v. Geneva Metal Co., 190 F.2d 59, 60 (C.A.6, 1950); Lovas v. General Motors Corp., 212 F.2d 805, 807 (C.A. 6, 1954); Trivette v. New York Life Insurance Co., 283 F.2d 441, 442 (C.A.6, 1960).

v. Sigler, 122 F.2d 279, 284 (C.A.6, 1941). Once it is established that a person appeared as an obstruction on the track and that a railroad failed to comply with the requirement that "the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent the accident," liability is visited upon the railroad by T. C.A. § 65–1209, which provides that in such instance the railroad "shall be responsible for all damages to person or property occasioned by, or resulting from, any accident or collision that may occur."[5] We need here deal only with Gilreath's status as an obstruction.

█ █ In Southern Railway Company v. Hutchings, 288 F.2d 837, 838 (C.A.6, 1961) (applying Tennessee law) we repeated the familiar rule that on this testing of the propriety of the direction of a verdict, the evidence and the inferences reasonably and justifiably to be drawn therefrom are to be viewed in a light most favorable to the plaintiff. It is familiar Tennessee law, too, that proof of an essential fact may be made by circumstantial evidence, Law v. Louisville & N. R. Co., 179 Tenn. 687, 696, 170 S.W.2d 360 (1943). But, "a verdict cannot be based on speculation, surmise or conjecture." Law v. Louisville & N. R. Co., supra, 179 Tenn. at p. 694, 170 S.W.2d at p. 362.

The Tennessee courts have, on numerous occasions, faced the difficult task of determining when, and when not, circumstantial evidence has contained sufficient probative value to permit a jury to find that a maimed or dead body found upon a railroad track was that of someone who had been an obstruction in the path of the train which inflicted the injuries. No purpose would here be served by a case-by-case analysis of the relevant Tennessee decisions and those of the other courts applying Tenessee law. In the following cases, circumstantial evidence was found sufficient to allow a jury to find that a de-

ceased had been an obstruction on the road. Felton v. Newport, 105 F. 332 (C.A.6, 1900) ; Crowe v. Birmingham & North Western Railway Co., 2 Tenn.App. 634 (1925), cert. denied Tenn.Sup.Ct. 1926; Law v. Louisville & N. R. Co., 179 Tenn. 687, 170 S.W.2d 360 (1943) ; Dixon v. Southern Ry. Co., 111 Miss. 144, 71 So. 306 (1916). The circumstantial evidence in the following cases was found insufficient to permit such a finding: Nashville, C. & St. L. Ry. v. Sutton, 21 Tenn.App. 31, 104 S.W.2d 834, cert. denied, Tenn.Sup.Ct. (1937) ; Meador v. Nashville, C. & St. L. Ry., 177 Tenn. 273, 148 S.W.2d 371 (1941) ; Virginia & S. W. Ry. Co. v. Hawk, 160 F. 348 (C.A. 6, 1908) ; Western & Atlantic R. R. v. Land, 187 Tenn. 533, 216 S.W.2d 27 (1948).

These cases do not identify any fact or facts, the presence or absence of which will in all cases be determinative. Decisions for the plaintiff in several of the cases turned on the fact that the deceased was walking on the tracks when last seen alive. But, in Law v. Louisville & N. R. Co., 179 Tenn. 687, 170 S.W.2d 360 (1943) such circumstance was held not to be a sine qua non to the sufficiency of a plaintiff's case. In holding, as we do, that a verdict should not have been directed, we need only discuss the cases of Law v. Louisville & N. R. Co., supra, and this court's decision in Felton v. Newport, supra.

In the Law case, the proofs showed that on a certain night a young man left the home of his young lady friend intent on going home. He was last seen walking in the direction of a path or road which would ultimately take him to his home. This path led east to a point where it went under a railroad trestle and then turned south along the side of the track. At the point where the path passed under the trestle, it went through a stream of water. For this reason, the normal

---

5. This accident occurred in 1958. In 1959, the pertinent statute was amended by the Tennessee legislature so as to make contributory negligence and lack of proximate cause defenses to an action based on the statute. Although the trial of this case took place after the amendment, such amendment is not applicable here. Southern Ry. Co. v. Miller, 285 F.2d 202 (C.A. 6, 1960).

way of passing the point was to go up the embankment on another path prior to reaching the trestle, then to walk south on the trestle, and once over the trestle to resume the path going south. The body of the deceased was found on the track a short distance south of the trestle. About twenty minutes after the deceased had left the girl's home, a freight train passed over the railroad trestle. On those facts, the court held that a prima facie case had been established and that it was error to direct a verdict for defendants at the close of plaintiff's proofs.

In his opinion in the Law case, concurred in by a majority of the Court, Justice Chambliss recited his recognition of the rule that a verdict cannot rest on conjecture or surmise, but made it clear that while the circumstantial evidence must make out the more probable hypothesis, it "need not arise to that degree of certainty which will exclude every other reasonable conclusion." On this subject, he quoted from a cited note as follows:

"In a civil case to warrant recovery on circumstantial evidence, the evidence must 'outweigh' other hypotheses than the one contended for in the sense that evidence sustaining the hypothesis contended for must preponderate as against the others, but it need not 'exclude' them in the sense of conclusive demonstration of impossibility." 179 Tenn., at p. 700, 170 S.W.2d at 365.

Justice Chambliss then concluded:

"As I view it, the determinative question of fact is this: When this young man on his way home reached the point where his road ran under the railway bridge and thru this swollen creek, did he follow the road, or use the bridge? Is it not more probable, more reasonable, to conclude that he climbed the gravel pathway to the railway track and crossed on this bridge, than that he waded thru the creek and proceeded along this muddy road? If so, he was walking along

the track near where his remains were found at about the time a train going south passed. The proof of this, though circumstantial, must be given the same effect as if there had been direct testimony that he was 'seen upon the track before struck.'" 179 Tenn. at 701, 170 S.W. 2d at 365.

■ Turning, then, to the evidence in the case before us, we begin by stating that at no time was the deceased "seen upon the track before struck." He was, however, last seen walking south along a path that was within three or four feet of the west main line Track No. 2. He was near to a place where it was customary for pedestrians to cross all the tracks from west to east. There was evidence that he was that night expected at his sister-in-law's house on Polk Street and that to arrive there he would, at some point, have to leave the westerly side of the railroad right of way and proceed across the tracks. He was last seen at about eleven o'clock. At about that time a Southern Railway Company train was proceeding south on the easterly, or northbound, track. As Gilreath was so walking southerly, there was a train coming in the same direction about 250 or 300 feet to his rear. Its headlight was shining down the track and the signals on Rossville Boulevard warning of its approach were operating. While the witness Ware said this train was proceeding southerly on main line Track No. 2, he could have been mistaken and a jury could find that this was the Southern Railway Company train which, under defendants' admission and the testimony of McCain, was, in fact, proceeding, at about the time in question, southerly on main line Track No. 1. Shortly after the train had gone by, Gilreath, fatally injured, was found within the rails of either main line Track No. 1 or No. 2. McCain placed him on Track No. 1—Ware, on Track No. 2. It would have been for the jury to resolve this testimonial conflict. It could have accepted McCain's version, notwithstanding Ware's opposite observa-

tion.[6] Gilreath was found on the track at a point north of Rossville Boulevard, which would have been consistent with his having crossed from west to east at or about the point where Ware said persons customarily crossed. Pieces of his flesh were found from the point where his body lay southerly along the track to Rossville Boulevard. Gilreath's wounds were not inconsistent with his having been struck on his left side.

The parties have in this court presented their respective hypotheses as to how Gilreath was injured. Defendant railroads contend that Gilreath must have been "swinging on" to the train or having already got aboard, fallen under the train's wheels. They theorize that he was beginning a journey as a hobo. They claim support for this theory from the fact that he had once been in a circus, that he seemed to have no permanent address in Chattanooga, that he had spoken at one time of going to his mother and sister in Cloudland, where he had a house, that his wife was living in Georgia, and because one witness said that she had assumed that Gilreath had been "hoboing" because she lived on a road "where I see a lot of men coming through." He was described by one witness as a drifter. Aside from the thin support derived from the foregoing, defendants' theory, or hypothesis, is substantially impaired by the evidence that Gilreath was regularly employed with a house mover when the latter had jobs to be done, and he was described by his immediate employer as an excellent worker, that he had worked to the evening of the day when he was killed, that he was expected to return to work the next day, and that he was planning to stay that night at his sister-in-law's.

■ Plaintiff's hypothesis appears to be that, from all the evidence, including Gilreath's known destination, which required him to cross the tracks, and from the inferences justifiably to be drawn from such evidence, the jury could "reasonably have concluded that decedent was attempting to cross these tracks, presumed the southbound train to be traveling right-handedly (on Track No. 2) and was then struck by the southbound train traveling over on the left-handed track (No. 1)." [7]

■ We are unable to say that a jury of reasonable men would be wrong in finding that the greater weight of the circumstantial evidence supported the plaintiff's version as the more probable explanation of how Gilreath came to his death. In Felton v. Newport, 105 F. 332 (C.A.6, 1900), this Court was dealing with the Tennessee Precautions Act here involved. We find the language therein employed by Judge Severens expressive of our view of the case before us.

"While we freely admit as sound doctrine that juries ought not to be permitted to fasten, by their verdicts, liabilities upon parties, based upon mere conjecture, or where the probabilities are as easily reconcilable with freedom from fault as the contrary * * * still we conclude, after mature reflection, that the evidence in the present case was such that it was necessary to leave the questions of fact whether the deceased had appeared upon the track, and whether the railroad company had discharged its duty * * * to the jury." (105 F. 334)

We hold here that a verdict should not have been directed at the close of plaintiff's proofs in favor of Southern Railway Company. We need not, and do not, now decide whether plaintiff's prima facie case

6. It is within a jury's province to make its selection of the fact to be found from the evidence, notwithstanding conflict and contradiction between the witnesses on one or more points. Young v. City of Nashville, 26 Tenn.App. 658, 663, 176 S.W.2d 377 (1943); Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, 260 (C.A.6, 1960).

7. While indulgence in this hypothesis would, under the common law, convict the deceased Gilreath of contributory negligence, it would not call for direction of a verdict in an action such as this. Tennessee Central R. Co. v. Binkley, 127 Tenn. 77, 86, 153 S.W. 54 (1912); Illinois Central R. Co. v. Sigler, 122 F.2d 279, 284 (C.A.6, 1941). See footnote 1.

may or may not be overcome by defense evidence introduced upon a retrial.

For the reasons stated below, we affirm the verdict directed for the Alabama Great Southern Railroad Company.

2. *Do the proofs sufficiently identify the railroad which caused the death?*

Defendants contend that plaintiff's proofs were insufficient to permit the jury to find which one, if either, of the defendant railroads was responsible for the operation of the train which fatally injured plaintiff's decedent. We have held above that the evidence was, as contended by plaintiff, sufficient to permit a jury to find that the southbound train of defendant Southern Railway struck the deceased. Plaintiff asserts that because the train which struck the deceased was operating on tracks owned by the Alabama Great Southern Railroad, a presumption arises that any train moving thereon was being operated by it. We need not discuss the authorities cited in support of this contention. Aside from this claimed presumption, there was no evidence, direct or circumstantial, that the Alabama Great Southern was operating a train at or near the scene at the time involved. Plaintiff's own hypothesis negatives this possibility, and if there was any presumption that the latter railroad was involved, it was overcome by plaintiff's own proofs and what she contends for them.

3. *Evidence of damages.*

One other point raised by plaintiff merits discussion. In attempting to prove damages for loss of earnings, plaintiff's witnesses were limited by the District Judge to testimony of Gilreath's actual earnings. While this point may not arise upon a retrial, we point out that under Tennessee law, the jury's determination of damages in this regard is not made solely on the basis of the deceased's actual earnings, but on the basis of his capacity to earn money. Roper v. Memphis St. Ry. Co., 136 Tenn. 23, 27, 188 S.W. 588 (1916); Southern Coach Lines, Inc. v. Wilson, 31 Tenn.App. 240, 243–244, 214 S.W.2d 55 (1948). Opinion evidence is admissible to establish such capacity. Roper v. Memphis St. Ry. Co., 136 Tenn. 23, 28 (1916), 188 S.W. 588; Southern Coach Lines, Inc. v. Wilson, 31 Tenn.App. 240, 244–245, 214 S.W.2d 55 (1948).

The judgment in favor of defendant Southern Railway Company is reversed and a new trial ordered. Judgment in favor of defendant Alabama Great Southern Railroad Company is affirmed.